### WHITMAN et al. v. ALDRICH et al.

(Court of Civil Appeals of Texas. Ft. Worth. April 5, 1913. Rehearing Denied May 24, 1913.)

1. APPEAL AND ERROR (§ 750*)—ASSIGNMENTS OF ERROR—CONCLUSIONS OF LAW—EFFECT.

Assignments of error which do not attack the findings of fact by the court below, but only the conclusions of law, raise only the question of the sufficiency of the findings to support the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3074–3083; Dec. Dig. § 750.*]

2. LANDLORD AND TENANT (§ 66*)—ESTOPPEL OF TENANT—ADVERSE POSSESSION.

Where one claiming land under the statute of 5 and 10 year limitations was in possession thereof under a lease, his possession is not adverse to the landlord, in the absence of a repudiation by him of his tenancy.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 199–209; Dec. Dig. § 66.*]

3. EVIDENCE (§ 265*)—ADMISSIONS—RECITALS IN DEEDS—EFFECT.

A recital in a deed that the land conveyed thereby was deeded to the grantor by his father and mother is not sufficient to establish the existence of the deed referred to as against those not in privity with the parties to the deed containing the recitals.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029–1050; Dec. Dig. § 265.*]

4. TENANCY IN COMMON (§ 15*)—ADVERSE POSSESSION.

The plea of limitations is not available to parties who have been in possession as tenants in common with the claimants of adverse interest.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

5. JUDGMENT (§ 732*)—CONCLUSIVENESS—MATTERS IN ISSUE BUT NOT DECIDED.

Where a judgment in a former suit to try title to lands affirmatively shows that the lands derived through one conveyance only were covered by judgment, such judgment is not res judicata between the same parties as to lands derived, through a different conveyance, even though such lands were within the pleadings in the former case.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1260, 1261; Dec. Dig. § 732.*]

6. JUDGMENT (§ 713*)—CONCLUSIVENESS—MATTERS IN ISSUE ON PLEADINGS.

All matters put in issue by the pleadings, and which could have been adjudicated in the suit, are concluded by the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1066, 1099, 1234–1237, 1239, 1241, 1247; Dec. Dig. § 713.*]

7. APPEAL AND ERROR (§ 877*)—PARTIES ENTITLED TO ALLEGE ERROR—ERROR NOT AFFECTING APPELLANT.

Where in an action for partition between numerous parties, appellants have recovered all the land to which they are entitled, they cannot complain of error in the court in awarding to certain of the appellees land to which appellants have no claim.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3560–3572; Dec. Dig. § 877.*]

8. CANCELLATION OF INSTRUMENTS (§ 47*)—EVIDENCE—AGENCY COUPLED WITH INTEREST.

Evidence that an attorney in fact had not complied with the terms of his powers of attorney, coupled with an interest, and had made misrepresentations to his principals, held sufficient to warrant a judgment canceling the powers of attorney.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 102, 103; Dec. Dig. § 47;* Contracts, Cent. Dig. § 1199.]

Appeal from District Court, Haskell County; Jno. B. Thomas, Judge.

---

Consolidated actions of trespass to try title by J. J. Sweet and others against W. P. Whitman and others, and for partition of the same land by A. A. Aldrich and others against W. P. Whitman and others. From a judgment determining the interest of the various parties and ordering a partition, W. P. Whitman, Edward S. Emery and others, Jane Yarborough and others, and T. G. Carney appeal. Affirmed.

Scott & Key, of Haskell, W. T. Andrews, of Stamford, Chapman & Coombes, of Anson, A. C. Foster, of Rule, and Sanders & Wilson, of Haskell, for appellants. H. G. McConnell, of Haskell, Tandy & Hosey, of Ft. Worth, and Thomason & Thomason, of Haskell, for appellees.

SPEER, J. This is a consolidation of two suits, originally brought in the district court of Haskell county; the first being an action of trespass to try title by J. J. Sweet et al. against W. P. Whitman et al., and the second being an action by A. A. Aldrich et al. against W. P. Whitman et al. for a partition of the same land, being a 1,280-acre survey patented to Isaac Parker as assignee of Richard Finch on August 12, 1857. The facts concerning the entire controversy are thus found by the trial court:

"(1) This is a controversy of various claimants over 1,280 acres of land situated in Haskell county, Tex., patented to Isaac Parker, as-signee of Richard Finch, on the 12th day of August, 1857, by patent No. 915, vol. 3, and it is conceded by all of the parties to this suit to have been the community property of Isaac Parker and his wife, Lucy W. Parker, whose name before her marriage was Lucy W. Chatham. Isaac Parker was married twice, first to Lucy W. Chatham prior to 1836, and lived with her until her death on August 29, 1867; they had four children by said marriage, to wit, Isaac Duke Parker, William E. Parker, Virginia A. Parker, who married Ballard, and Lucy Ann Parker, who first married Johnson and after the death of her first husband married S. C. Haile. Isaac Parker was married the second time to Virginia Hill in the year 1869 and lived with her until his death, which occurred in the year 1882. Said Virginia Hill Parker died October 24, 1904. That by his second marriage Isaac Parker had three children, as follows: Adam Parker, who died in the year 1905, was never married and left no issue; Sallie V. Parker, who married J. B. Sikes, and who is now living; Rebecca Parker, who married Boone, and after his death she married one Rawlins, and they are now living. Isaac Parker lived with his wives in Texas from the year 1836 until his death.

"Isaac Duke Parker died in the year 1902 and left the following children as his sole and only heirs: R. L. Parker, Duke Parker, Alex E. Parker, Josey Parker, all now living.

Josey Parker married a man by the name of Thomas, from whom she is separated. Isaac D. Parker was married twice and has a son by the name of Sam Parker, who died leaving one son, named Loyd Parker, and who is now living.

"William E. Parker died on the 22d of January, 1858, leaving five children, viz., Lucy Parker, Mary Parker, T. J. Parker, W. C. Parker, and Daniel G. Parker. Lucy Parker married one Sweet and had four children at the time of her death, viz., Jeff Sweet, Andrew J. Sweet, Charlie Sweet, and William S. Sweet, all living, except Charlie, who died leaving a son, Charley, now living. Mary Parker married one Thrasher, and she and her husband are dead, leaving one child, Mary Thrasher, who married C. D. Bell and is now living. T. J. Parker married and had three children: Laura, who married one Kuntz and is now living, Agnes, who died un-married and without issue, and W. H. Parker, who is now living. W. C. Parker died with-out issue leaving a wife named Pheobe, who is now the wife of W. L. Harris and is liv-ing. W. C. Parker left a will devising all of his property to his widow. Daniel G. Parker is now living.

"Virginia A. Parker, daughter of Isaac Parker, married one Ballard, and they by said marriage had two children: Nannie, who was married to one Fulton, now living. The husband and other child of Virginia A. Par-ker are dead. The child left no issue. Vir-ginia A. Ballard died in 1861.

"Lucy Ann Parker was married twice; first married to William F. Johnson, and second time to S. C. Haile. Both husbands are dead. Johnson died in 1849 and Haile on the 5th day of May, 1903. Mrs. Haile, former-ly Lucy Ann Parker, died in the year 1875, on the 11th day of July, and all lived in the state of Texas up to the time of their respective deaths. As a result of her marriages, Lucy Ann Parker had eight children, two by the first marriage and six by the second marriage. The children by the first marriage were Mary Johnson, who married John Kyle, and Jane W. Johnson, who married J. C. Yarborough; by the second, Josephine Haile, who married John Murchison, Lucy Haile, who married F. A. St. Amant, Texann Haile, who married E. L. Simpson, Laura Haile, who married John E. Reagan, and Isaac George Haile and Chester Haile. Mary Johnson married John Kyle, and John Kyle died in the year 1878, and Mary Kyle died in 1879 and left four children, viz., Lou Bartee, wife of W. J. Bartee, Mary Rickard, wife of J. D. Rickard, Elizabeth Clinkscales, wife of Robert Clinkscales, and W. J. Kyle, all living. Jane W. Johnson married J. C. Yarborough in 1884 and both of them are living. Josephine Haile married John Murchison in 1868, and both of them are living. Lucy Haile married F. A. St. Amant in 1874, and both are living. Texann Haile and E. L. Simpson were mar-ried in 1877, and both are living. Laura

Haile married John E. Reagan in 1884, and both are living. Isaac George Haile died in the year 1868 and left no wife or children. Chester Haile is now living and was born on the 20th day of July, 1868.

"J. F. Paramour and his wife, Sarah Lou Paramour, who are not connected by descent with the heirs of the original Isaac Parker, but are parties through whom some of the parties to this suit claim by reason of deeds from Isaac Parker and the inheritance and descendants of said vendees, and they are here set out for a better understanding of this case. J. F. Paramour and his wife, Sarah Lou Paramour, were married in 1858, and both of them are dead. J. F. Paramour died in 1884, and Mrs. Paramour died in the year 1868, and both died in the state of Texas. They had three children by said marriage, to wit, Cassie, Claronteen, and Jennie, all girls. Cassie died after having married and left no issue. Jennie married Jim Douglass in the year 1878 and died in the year 1899, leaving four children surviving her, to wit, Ola, Estella, Lillie Bell, and Lee, all living. Their father, Jim Douglass, is living. Ola married Robert McVey, who is living. Claronteen Paramour married R. C. Barbee in the year 1884, and she died in the year 1886; she had one child, which also died in the year 1886 at the age of one year, leaving its father surviving it and its only heir.

"(1b) W. S. Green, a remote vendee, claiming through Isaac Parker, died intestate on the 4th day of October, 1903, and there was no administration on his estate, and no necessity for one. Said W. S. Green left surviving him as his only heir at law his wife, Mary E. Green, and the following children: Tom H. Green, George L. Green, Lillie S. McDonald, Mary Elizabeth Green, Margaret E. McDonald, Elizabeth C. Green, all of age, and the minors, Nora E. Farris, Lena May Green, Willie E. Green, and Bessie Irene Green.

"(1c) The following parties claim through remote vendees of Isaac Parker: Francis F. Emery, Jr., Edward S. Emery, and Maria S. Emery, who are the only children and sole surviving heirs of Francis F. Emery, deceased. Francis F. Emery, Jr., is the duly qualified and independent executor without bond of the estate of Francis F. Emery, deceased.

"The above facts as to heirship, and the facts above set forth, are undisputed by any of the parties to this suit.

"(2) The court finds: That on October 27, 1865, Isaac Parker, the patentee, and his wife, Lucy W. Parker, conveyed to Lucy Ann Haile and her children, jointly, 320 acres undivided interest in the 1,280-acre survey in controversy in this suit. The court finds that the children then living were Jane W. Yarborough, Texann Simpson, Josephine Murchison, Lucy St. Amant, Laura Reagan, and the following four children of Mary

Kyle, deceased, to wit: W. N. Kyle, Lou Bartee, Mary Rickard, and Elizabeth Clinkscales. That George Isaac Parker died in 1868, and his heirs then living were his mother and father, Lucy Ann Haile and S. C. Haile. That Chester Haile was born after the execution of said deed and took nothing by virtue of the same.

"(3) That in the case No. 358 in the district court of Haskell county, Tex., styled Yarborough v. Whitman et al., filed on the 28th day of April, 1904, this particular 320 acres of land deeded to Lucy Ann Parker-Haile and her children was in litigation, and judgment was rendered in said cause in said court disposing of said 320 acres of land among the parties to said suit, which was afterwards on, to wit, March 14, 1908, affirmed by the Court of Civil Appeals for the Second district, in which said suit Yarborough et al. v. Whitman et al., said land was awarded as follows: 163⅓ acres set apart to the heirs of Lucy Ann Haile, as follows: Jane Yarborough, Josephine Murchison, Lucy St. Amant, Texann Simpson, Laura Reagan, and the following four heirs of Mary Kyle, deceased, to wit: W. L. Kyle, Lou Bartee, Mary Rickard, and Elizabeth Clinkscales. Chester Haile was a party to said suit but recovered nothing. In said cause H. G. McConnell, a defendant in that suit and a defendant in this suit, recovered 103⅓ acres of land, and E. P. Thomason, R. C. Barbee, Jim Douglass, Estella Douglass, Lillie Douglass, Lee Douglass, Ola McVey, and her husband, Robert McVey, recovered 53⅓ acres.

That a suit for the partition of the interest respectively recovered in said cause was filed in the district court of Haskell county, Tex., styled A. A. Aldrich et al. v. W. P. Whitman et al., and another suit was filed in the district court of Haskell county, Tex., No. 672, on the 8th day of July, 1910, styled A. J. Sweet et al. v. W. P. Whitman et al., and said actions were both by the order of the court consolidated under the style of A. A. Aldrich et al. v. W. P. Whitman et al., No. 696, and the respective pleadings in said consolidated case constitutes the issue in this case. The court finds that for the purpose of this present suit, and the action and issues therein that the findings and disposition of the 320 acres of land deeded by Isaac Parker and wife to Lucy Ann Haile and her children jointly on the 27th day of October, 1865, and disposed of in the original suit in the district court of Haskell county, Tex., and affirmed by the Court of Civil Appeals for the Second Supreme Judicial District of Texas, as above set forth, should not be disturbed in this action, and the court finds as a fact that the respective interests found by the court heretofore in said suit are binding on all of the parties hereto.

"(4) The court finds that on the 14th day of October, 1868, Isaac Parker, the original patentee of said land, deeded to his grand-

sons, the sons of William E. Parker, to wit, W. C. Parker and T. J. Parker, 320 acres out of the 1,280-acre tract jointly, and that one W. S. Green, by regular chain of title, is the owner of 160 acres of said 320 acres so deeded by Isaac Parker, and that W. P. Whitman by regular chain of title is the owner of the other 160 acres of said 320 acres, all of which constitutes an undivided interest in this said 1,280-acre tract of land.

"(5) The court further finds that on the 20th day of June, 1879, I. D. Parker, a son of the original patentee, Isaac Parker, executed a deed to one Henry Kink to 320 acres, an undivided interest in the 1,280-acre tract in issue in this suit, which deed was filed for record August 11, 1879, and in which deed said I. D. Parker recited that said land was deeded to him (the said I. D. Parker) on the 27th day of October, 1865, by Isaac Parker and Lucy W. Parker, but said alleged deed from Isaac Parker to I. D. Parker, as recited in the deed from I. D. Parker to said Henry King, was not offered in evidence in this case, and the deed itself is not disclosed from any record in this case.

"(6) The court finds that by the will of Isaac Parker, the original patentee, dated the 11th day of April, A. D. 1874, and probated in the county court of Parker county, Tex., in May, 1883, and which will was offered in evidence in this case, there is the following recital: 'Whereas, I have heretofore given by deeds of gift to the four children of the issue of myself and my first wife, Lucy W. Parker, all of my estate, that it was and is my will and desire that they should have'—and then proceeds to will his property to other parties, reciting: 'I give to my son Isaac D. Parker his separate share, and to my daughter Virginia A. her separate share, and to the children and heirs of my son Wm. E. Parker the full share which their father, the said Wm. E. Parker, would have received if he had been living at the time said deed of gifts were made, and to Lucy Ann Haile her separate share, thereby making all of the provisions for the aforesaid children that I at that time thought, and that I at the present writing do think, taking my circumstances into consideration.' The said will does not specify what property particularly was given to either of those children, and the court finds as a fact that at the time the said deeds of gift referred to were made, if made, said Isaac Parker owned other lands and property than the 1,280 acres in controversy in this suit.

"(7) The court further finds as a fact that the parties to this suit, who are contesting the claims of the Emery heirs, and who are not attempting to claim through said supposed deed from Isaac Parker to his son, I. D. Parker, aforesaid, are and have been in possession as joint tenants or otherwise of the land in controversy in this suit from the time this land was originally inclosed some time in the early '80's.

"(8) The court, therefore, finds that the evidence is insufficient to raise a presumption that a deed was made from Isaac Parker and his wife, Lucy A. Parker, to Isaac Duke Parker, to any portion of the 1,280 acres of land in this suit, as recited by Isaac Duke Parker in the deed to King, as above set forth.

"(9) No deed was offered in evidence from Isaac Parker, patentee to William E. Parker, his son, or to his daughter, Virginia A. Parker, and Ballard, and no one is claiming through said deed to any portion of the land in controversy in this suit.

"(10) The court finds that Francis F. Emery, Jr., Maria S. Emery, and Edward S. Emery, defendants in this suit, claim in this suit, through the said alleged deed from Isaac Parker and wife to Isaac Duke Parker by regular chain of title from Isaac Duke Parker down to and including them, an undivided interest in this land.

"(11) Lucy Parker, the first wife of Isaac Parker, died August 29, 1867, and that only 320 acres of this land had been deeded away up to that time by Isaac Parker to his daughter Lucy Ann Haile and her children, and that at the death of Lucy W. Parker her interest of 480 acres remaining in this land, it being community property, passed to her son Isaac Duke Parker and her daughter Lucy Ann Haile, 240 acres each, an undivided interest.

"(12) That, after the death of Lucy W. Parker, Isaac Parker married Virginia Hill in 1869, and that as aforesaid, after the death of his first wife, he deeded 320 acres of this land to W. C. Parker and T. J. Parker, his grandsons, and sons of William E. Parker, jointly, which has heretofore and as above set forth been found to be the property—160 acres each of W. P. Whitman and W. S. Green, heirs.

"(13) This leaves 160 acres of this 1,280-acre tract at the death of Isaac Parker in 1882 which the court finds was disposed of by his will to Virginia Hill Parker, his widow, and to Adam Parker and Rebecca Rawlins and Sallie V. Sikes. That, at the death of Virginia Hill Parker, the second wife of Isaac Parker, in 1904, and the death of said grandson of Isaac Parker, to wit, Adam Parker, without issue, and who died in 1905, their interest passed to Rebecca Rawlins and Sallie V. Sikes.

"(14) The court further finds that 340 acres inherited by Lucy Ann Haile from her mother's community interest in said land passed to King and Paramour and their vendees by regular chain of title from Lucy Ann Haile and S. C. Haile, her second husband. And that G. W. Thomason, by virtue of a contract with the Paramour heirs, acquired a one-half interest in the Paramour interest in said lands for services rendered to said heirs in representing them in this and other suits involving the title to their interest in said lands.

"(15) The court finds that on the 9th day of April, 1904, Virginia Parker, the second wife of Isaac Parker, Rebecca Boone, afterwards married to J. B. Rawlins, and Adam Parker executed a power of attorney to T. G. Carney, one of the defendants in this suit; that on the 13th day of August, 1904, Laura Kuntz and husband, L. L. Kuntz, executed a power of attorney to said T. G. Carney; that on the 9th day of April, 1904, Sallie V. Sikes and her husband, J. B. Sikes, executed a power of attorney to T. G. Carney, a defendant herein; that on the 30th day of March, 1904, D. J. and E. J. Parker executed a power of attorney to the defendant T. G. Carney; and that on the 6th day of October, 1904, W. S. Sweet and J. J. Sweet executed a power of attorney to said defendant T. G. Carney. The court finds that each of said powers of attorney contained the following provisions authorizing the said defendant T. G. Carney, as attorney, for said parties, to recover and reduce to possession, by suit or otherwise, their undivided interest in the survey in controversy in this suit, and to any and all other property said parties may own, granting to their said attorney authority to do and perform any and all acts and things necessary to be done in and about said business as fully as they might do if personally present with power of substitution, and ratifying and confirming the acts of their said attorney, and contains the further recital: 'That whereas the said T. G. Carney will have to incur considerable expense and will have to employ legal counsel to assist him in said business, in consideration of same and of services performed and to be performed by said Carney in his behalf they do hereby give, grant, sell, and convey and deliver to said T. G. Carney one-half of all sums of money or other property, and one-half undivided interest in all sums of money or other property, and a one-half undivided interest in all lands recovered by virtue of power conferred. The said one-half interest conveyed to said Carney is conveyed to him charged with all costs and attorneys' fees hereinafter to be incurred in any future litigation concerning said premises, and that no compromise was to be made by said Carney without the written consent of the grantors.'

"(16) The court further finds that, after the execution of said powers of attorney aforementioned to T. G. Carney, no suit or action was brought by the said Carney for the possession of said lands.

"(17) That on the 3d of December, 1910, Rebecca Rawlins and her husband, J. B. Rawlins, executed a power of attorney coupled with a one-third interest to Louis H. Tandy and George E. Hosey, and that on the 31st of December, 1910, Sallie V. Sikes and husband, J. B. Sikes, executed a power of attorney coupled with a one-third interest to L. H. Tandy and George E. Hosey. That said powers of attorney constituted and appointed said Tandy and Hosey their attorneys in fact to recover and reduce to possession all the undivided interest of the grantors in the Richard Finch survey of 1,280 acres involved in this suit, for a consideration of legal services rendered and to be rendered by the said grantee, granted, sold, and conveyed to said Tandy and Hosey an undivided one-third interest in all of the lands or other property or money which they can realize under the power of attorney herein, and in consideration of services and the prosecution of suit within a reasonable time after date of power of attorney for the recovery of the property above mentioned, and the grantors agree to assist the grantees in the prosecution of said suits and to bear their pro rata part of all necessary expenses, the taking of depositions, and thereafter to provide costs and appeal bond, when necessary. That thereafter, on the 8th day of July, 1910, said Tandy and Hosey filed suit for the grantors in said powers of attorney, along with other heirs of Isaac Parker, deceased, in the district court of Haskell county, Tex., styled A. J. Sweet et al. v. W. P. Whitman et al., wherein W. P. Whitman and T. G. Carney were made parties defendant in said suit. And that in said suit citation was issued on the 8th day of July, 1910, and served therein on the defendant **W. P. Whitman** on the 9th day of July, 1910, and served on the defendant T. G. Carney on the 14th day of July, 1910. The court further finds that the defendant T. G. Carney never took any action under said powers of attorney or filed any suit thereunder, nor filed any pleadings on behalf of the parties granting him said power of attorney until the 28th day of May, 1912, in consolidated case No. 696, styled A. A. Aldrich et al. v. W. P. Whitman, et al., being the present case.

"(18) The court finds that on the 22d day of July, 1904, the said T. G. Carney wrote the parties from whom he received powers of attorney that the land in question in this suit had been held by commen for 50 years and held by rich men under 16 years' limitation by deed from the state of Texas, and that the parties controlling it were worth over $100,000, and that he would have a hard fight, but that he had worked on the case for two years; he represented to them that he had power of attorney from most of the heirs, and power to bring suit and reduce the land to possession, and that they were to give him one-half of what he could gain, and that they would not be out a dollar for anything. That on the 12th day of July, 1911, when he was brought in as a party defendant to said cause, he wrote to Mrs. J. B. Sikes, one of the parties from whom he held a power of attorney, that he had at last succeeded in getting her claim as one of the heirs of Isaac Parker before the court, and that he had two good firms of lawyers employed in the case. That he represented to said parties in order to secure said powers

of attorney that he would act promptly. The court finds from the testimony of Mr. Carney when on the stand that the only reason that he gave that he had not taken any action under the powers of attorney held by him was that he could not get all of the heirs to join in powers of attorney to him, and the court finds that, otherwise than in spending some money in attempting to hunt up the other heirs claiming an interest in the land, Mr. Carney had done nothing toward the execution of the powers of attorney for the parties from whom he held them, and that he made representations that were not true.

"(19) The court finds that Adam Parker, one of the parties through whom T. G. Carney held power of attorney in this case, coupled with an interest, died in 1905, never having revoked the power of attorney or otherwise having taken any adverse action to said Carney.

"(20) The court finds that this 1,280 acres of land was first inclosed about 1890 by A. H. Tandy with other lands in a pasture of over 10,000 acres. That in the fall of 1899 A. H. Tandy sold out his leases and fences around the Finch and other surveys to J. W. Johnson and son, who built a fence along the west line of the Finch survey and inclosed it with other lands in a pasture of less than 5,000 acres.

"(21) The court finds that S. W. Scott, as agent for Edward S. Emery and Emery heirs, collected rents on 320 acres of said inclosed lands of the 1,280 acres in this suit from A. H. Tandy and remitted it to them. And that, after the land was inclosed by Johnson as aforesaid in a pasture of less than 5,000 acres, said Scott gave said Johnson a rental lease on 320 acres of the land, undivided interest claimed by the Emerys in this case, and collected rents therefrom. Johnson continued to hold possession as aforesaid and to pay rents thereon until he sold out to Whitman, one of the defendants in this case, in the year 1901, and that Whitman succeeded Johnson in possession of this land and fenced the 1,280 acres to itself and paid lease money to the agent of the Emerys for the Emery interest in said survey of 320 acres, and also lease money was paid on other portions of said land, one being to H. G. McConnell for a 320-acre interest, the undivided interest of W. C. King, by the respective parties in possession, being Tandy, Johnson, and Whitman, respectively, since about 1890. That said Whitman also leased and paid lease money on 160 acres of the land claimed in this case by the W. S. Green heirs to G. R. Couch, as agent, from about 1901 down to the present time; and that prior to that time J. W. Johnson paid lease money on said 160 acres to G. R. Couch for the Green heirs for the years about 1899, 1900; and that prior to that time, from in the '80's down to the time that Tandy sold out his leases to Johnson, A. H. Tandy leased a 160-acre interest in the Richard Finch survey, undivided, claimed by the Green heirs, from their agent, G. R. Couch, and paid lease therefor to said Couch.

"(22) A tax deed was introduced in evidence executed by A. D. Tucker, tax collector of Haskell county, Tex., dated the 4th day of April, 1889, purporting to convey the interest of an unknown owner in 480 acres of the Richard Finch survey of 1,280 acres involved in this suit, to A. H. Tandy for a consideration of paying the taxes for the year 1888, amounting to $10.50, together with $5.25 penalties and costs and having the usual recitations in tax deeds made under the old law; said deed reciting that it conveys to A. H. Tandy a specific 480 acres of the said Richard Finch 1,280-acre survey, situated in Haskell county, Tex., and giving the metes and bounds thereof, the same as that claimed by the defendant W. P. Whitman in this case. Said tax deed was filed for record the 10th day of March, 1896; a deed was also introduced from A. H. Tandy to J. W. Johnson, purporting to convey all of his interest in the Richard Finch survey of 1,280 acres involved in this suit, dated the 6th day of September, 1901, describing the land by patent and volume number and by the original grantee. This deed was duly filed for record in Haskell county, Tex., on the 6th day of December, 1901. J. W. Johnson executed a quitclaim deed to the defendant W. P. Whitman in this case, conveying all of his interest in the Richard Finch survey of 1,280 acres, describing the survey number and the patent number which is referred to for further description, dated the 6th day of December, 1901, and filed for record on the 6th day of December, 1901, in the deed records of Haskell county, Tex. —the last two deeds above mentioned being quitclaim deeds.

"(23) The court finds that on April 1, 1909, Mary Y. Smith, a feme sole, deeded to W. P. Whitman, defendant in this case, for the sum of $2,400 all of her undivided interest of 160 acres of land in the 1,280-acre survey in controversy in this suit, and it was agreed in open court by all of the parties to this suit that the defendant W. P. Whitman took whatever interest passed from the deed of Isaac Parker, the original patentee, in this case, to his grandson, W. C. Parker, by regular chain of title. The defendant W. P. Whitman when on the stand testified that Mary Y. Smith wrote him that she had a son who was sick and a consumptive, and that she needed the money for this 160 acres of land, and that for sympathy for her under the circumstances he (Whitman) paid her for this land, not recognizing her legal right of it, but claiming it as his own, as a part of the 480 acres which he claims under the tax deed above introduced in evidence in this case.

"(24) The court finds from the testimony of the defendant W. P. Whitman that about December, 1901, while in possession of this

land for himself and others on the particular 480 acres which he claims under the tax deed, and thence by regular chain of title to himself, he carried a surveyor out to the land and had the 480 acres surveyed out, and that he cut a right of way out on the east side of the land, about 30 feet wide, and that he drove stakes at a distance of about 250 to 300 yards apart all around the land, and put down stakes for corners of the 480 acres; and the defendant W. P. Whitman also testified that he put stock pens on the land and fencing on ·the west end of the land which cost him about $125 altogether for the fencing and stock pens, also that he cleared about 67½ acres of said land after December, 1901, which he testified was worth $450. Defendant Whitman testified that he did not fence the 480 acres off to himself that he had in the whole 1,280-acre pasture because the fence would be in his way, and the water was on the east part of the 1,280 acres, and that he had no water or tanks on this 480 acres.

"(25) The court· finds also that the defendant Whitman had paid the taxes on the 480 acres of land each year from 1901 down to the present time, and that he used this land in connection with the balance of the 1,280 acres, about 800 acres of which he had leased from other claimants of the land, for the purpose of pasturage for stock; said 800 acres being the undivided interest of other claimants in the 1,280 acres, all the claimants being tenants in common.

"(26) The court finds as a conclusion of fact that the above facts are not sufficient to show title in the defendant W. P. Whitman by limitation under the statutes plead.

"(27) The court finds that the heirs of Lucy Ann Haile, who were parties in the case of Yarborough v. Whitman, acting by virtue of their attorney in fact, A. A. Aldrich, on the 10th day of August, 1908, conveyed to A. C. Foster and S. W. Scott an undivided 40⁵/₆ acres of their interest in the Richard Finch 1,280-acre survey involved in this suit.

"(28) The court finds that on the 11th day of December, 1891, W. C. King· executed a power of attorney to H. G. McConnell, authorizing him to sue for and recover and to take into his possession, divide, and partition 320 acres undivided out of the Richard Finch 1,280-acre survey, being the same land conveyed to W. C. King and J. F. Paramour by S. ·C. Haile and wife, Lucy Haile, by deed dated ·November 30, 1876, granting to said attorney, in consideration for services rendered and to be rendered in fee simple, an undivided one-third interest in said land above described."

Upon these facts the following conclusions of law were made and upon which judgment was entered:

"The court from the above and foregoing findings of fact and the record in this case therefore concludes as· a matter of law the parties to this suit should recover as hereinafter set forth, viz.:

"(a) That the plaintiffs A. A. Aldrich and George W. Crook do have and recover of and from all other parties to this suit the title and possession of an undivided 81²/₃ acres in and to the Richard Finch 1,280-acre survey.

"(b) That the defendant H. G. McConnell do have and recover of and from the plaintiffs and all other defendants in this suit the title and possession of an undivided 103¹/₃ acres of the Richard Finch 1,280 survey.

"(c) That the defendant W. P. Whitman do have and recover of and from the plaintiffs and from all other defendants the title and possession of an undivided 160 acres of the R. Finch survey of 1,280 acres.

"(d) That the defendants A. D. Foster and S. W. Scott jointly have and recover of plaintiffs and all other defendants an undivided 40⁵/₆ acres of the Richard Finch survey of 1,280 acres.

"(e) That the interveners, heirs of W. S. Green, deceased, to wit, Mary E. Green, surviving widow of said W. S. Green, and his children and sole heirs, to wit, William H. Green, Lillie S. McDonald, and husband, T. S. McDonald, George K. Green, Mary Elizabeth Green, Margaret E. McDonald, and husband, E. B. McDonald, Elijah C. Green, and the minors, Nora E. Farris, and her husband, Tommie Farris, Lena M. Green, Willie E. Green, Bessie I. Green, all minors and appearing herein by their next friend, Mary E. Green, do have and recover of and from the plaintiffs and defendants herein the title and possession of an undivided 160 acres of the Richard Finch survey.

"(f) That the defendants Francis F. Emery, Jr., Edward S. Emery, and Maria S. Emery, in their individual capacity as the heirs of F. F. Emery, Sr., and F. Emery, Sr., deceased, do have and recover of and from plaintiffs and defendants herein an undivided 240 acres in and to the Richard Finch survey.

"(g) That the interveners L. H. Tandy and George E. Hosey do have and· recover the title and possession of an undivided 44⁴/₉ interest in and to the Richard Finch survey from the parties to this suit.

"(h) That the defendants Sallie V. Sikes and husband, J. B. Sikes, and Rebecca Rawlins, formerly Rebecca Boone, and her husband, J. B. Rawlins, do have and recover an undivided 88⁸/₉ acres in the Richard Finch 1,280-acre survey from the other parties to this suit.

"(i) That the defendant T. G. Carney do have and recover the title and possession of an undivided 26²/₃-acre interest in and to the Richard Finch 1,280-acre survey from the other parties to this suit.

"(j) That the defendant Josephine Murchison, and husband, John Murchison, Lucy St. Amant and husband, F. A. St. Amant, and Laura Reagan and husband, John E. Reagan, part of the heirs of Lucy Ann Haile, do have and

recover the title and possession of an undivided interest of 40⅘ acres in and to the Richard Finch survey of 1,280 acres from the other parties hereto.

"(k) That the defendants G. W. and Y. L. Thomason, jointly, do have and recover the title and possession in and to an undivided interest of 220 acres in and to the Richard Finch 1,280-acre survey from the other parties to this suit.

"(l) That the defendant R. C. Barbee do have and recover of and from the other parties to this suit the title and possession of an undivided interest of 36⅔ acres of the Richard Finch 1,280-acre survey.

"(m) That the defendants Jim James Douglass, Estella Douglass, Lillie Douglass, Lee Douglass, Ola McVey, and her husband, Robert McVey, do have and recover of and from the other parties to this suit an undivided interest of 36⅔ acres and the title and possession of same in and to the Richard Finch survey of 1,280 acres.

"(n) That commissioners of partition, composed of the following parties, to wit, H. M. Rike, G. R. Couch, and E. M. Morris, should be appointed to partition this land and report their action to the next regular term of this court, according to the respective interest above set forth and in accordance with law."

A number of parties have appealed, and four separate briefs for appellants have been filed, among them one for W. P. Whitman, one for Edward S. Emery et al., one for Jane Yarborough et al., and one for T. G. Carney, and these will be disposed of in the order named.

[1] Appellant Whitman claimed an undivided one-eighth interest in the survey which the judgment gave him. He also pleaded the statutes of five and ten years' limitations as to an additional 480 acres described by metes and bounds and disclaimed any interest in the residue of the survey. He appeals from that part of the judgment which denied a recovery upon the pleas of limitation. All of the assignments of error presented by this appellant complain of the court's conclusions of law, and nowhere do they attack his finding of fact upon which such conclusions are predicated. In such a case the sufficiency of the findings to support the judgment is the only question raised by the assignments. Rushing v. Spreen, 142 S. W. 49.

[2] The findings show that appellant and his vendors Johnson and Tandy were in possession under a lease from the appellees and their vendors; the lease describing the leasehold as an undivided interest in the survey. Appellant's holding, therefore, cannot be adverse to appellees, in the absence of a repudiation of such tenancy, and there is no showing of any such repudiation. Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 709.

[3] The appellants Emery and others, who recovered 240 acres, complain that they were not awarded a total of 320 acres, assigning error to the court's refusal to find in favor of the existence of a deed from Isaac Parker to their grantor, I. D. Parker, conveying the 320 acres claimed by them. The claim is made that the recital in the ancient deed of I. D. Parker to Henry King, dated June 20, 1879, along with other circumstances in evidence, was sufficient to establish the existence of such a deed. It is well settled, however, that the general rule is that recitals in a deed are only evidence against the parties and their privies and do not affect strangers. Teagarden v. Patton, 107 S. W. 909; Schriver v. Taylor, 143 S. W. 231. None of appellees, as against these appellants, claimed through the Parker-King deed.

[4] The other assignments that these appellants should have recovered upon their pleas of limitations are answered by finding No. 7 to the effect that the appellees are and have been in possession as joint tenants or otherwise of the land in controversy during the time necessary to appellant's prescription.

[5] One of the most interesting questions presented is the contention of appellants Yarborough et al. that appellees Thomason et al. should be confined to a recovery of the 53⅓ acres recovered by them in the case of Yarborough v. Whitman et al., No. 358, in the district court of Haskell county (50 Tex. Civ. App. 391, 110 S. W. 471), upon the plea of res adjudicata. It is true the pleadings in that suit were such as to authorize the recovery of all the lands recovered (293⅓ acres) by appellees in this action, but the decree entered expressly shows that the recovery was confined to "an undivided interest of 53⅓ acres in and to the 320 acres of land situated in Haskell county, Tex., about 6 miles north of the town of Haskell, the same being an undivided interest of 320 acres in and to a survey of 1,280 acres of land patented to Isaac Parker, assignee of Richard Finch, on the 12th day of August, 1857, by patent No. 915, vol. 3, said 320 acres having been conveyed by the said Isaac Parker and his wife, Lucy W. Parker, to their daughter Lucy Ann Haile and to her children jointly on the 27th day of October, A. D. 1865."

[6] It cannot be controverted as a general principle that the judgment or decree of a court of competent jurisdiction is final, not only as to those matters accurately determined thereby, but also as to those matters comprehended in the pleadings and decree. In other words, all matters put in litigation by the pleadings and which could have been adjudicated in the suit are concluded by the judgment. But there are exceptions to this well-recognized rule, an important one of which is a case where an inspection of the judgment relied on to sustain the defense of res adjudicata discloses affirmatively that the claim last asserted had not been adjudicated. Pishaway v. Runnels, 71 Tex. 352, 9

S. W. 260. This case falls within the exception, as the above quotation from the judgment abundantly discloses.

[7] The appellees Thomason and others were permitted by the judgment to recover only 53⅓ acres of the land involved in the former suit, and the land recovered in the present case in excess thereof was by virtue of conveyance from Lucy Ann Haile and husband of land not included within the conveyance from Isaac Parker and wife, Lucy, to their daughter Lucy Ann Haile, which conveyance alone, as already shown, was embraced within the adjudication on the former appeal. The trial court did therefore observe strictly the former judgment as among all the parties and as to all the land properly embraced within its decree. Again, these appellants cannot complain of the recovery of the appellees Thomason and others, since at all events they have recovered all the interest to which they could possibly be entitled; their only claim being through the deed of Isaac Parker and wife to Lucy Ann Haile and her children, and, if there has been any error in the quantity of land awarded to the appellees, the same affects only the wife and children of Isaac Parker's second marriage, who took the residue of his estate by will.

[8] None of appellant Carney's assignments attack the court's findings of fact. The judgment is assailed because not supported by those findings. We think, however, the facts disclosed support the judgment canceling the powers of attorney given to this appellant, and this conclusion disposes of every assignment.

Upon the trial court's findings of fact, which we adopt as our own, we approve his conclusions of law and affirm the judgment.