CHARLES B. FENTON v. ANNA M. MILLER ET AL.

[See 76 Mich. 405.]

*Deed—Recording—Presumption of delivery—Tenants in common— Adverse possession—Evidence.*

1. The rule that the delivery of a deed is presumed from the fact of its being placed on record by the grantor applies to a case where the grantor, as register of deeds, records the deed, and remains in possession of the land conveyed; citing *Glaze v. Insurance Co.*, 87 Mich. 349; *Patrick v. Howard*, 47 Id. 40.

2. Until an heir who is in possession of the joint real estate has

done or said something which is unequivocal notice to his co-heirs that he claims the entire property as against them, there can be no ouster and no adverse possession.

3. The refusal of a guardian, who is in the possession of land owned by her wards as tenants in common with other heirs, to recognize the rights of such co-tenants in the land, a plea by the guardian of the general issue in an ejectment suit brought by the co-tenants on such refusal, and a plea by her of adverse possession to a bill for partition filed by the grantee of such co-tenants, amount to a total denial of the rights of such grantee, within the meaning of How. Stat. § 7812, which provides that, in an action of ejectment brought by one tenant in common against a co-tenant, the plaintiff must show an actual ouster by the defendant, or the commission of some other act amounting to a total denial of plaintiff's right as such co-tenant.

4. Where both parties fully understand the subject-matter in a controversy, an erroneous description of the property will not operate to defeat the effect of a written document.

5. Where, in an action of ejectment against a mother and her infant children, the mother is disqualified under the statute from testifying to a conversation with plaintiff's deceased grantor, such disability extends to her co-defendants, who would be benefited by such testimony.

6. A tenancy in common exists where two or more persons hold possession of lands and tenements at the same time, by several and distinct titles. The quantities of their estate may be different, their proportionate shares of the premises may be unequal, the modes of acquiring their titles may be unlike, and the only unity between them be that of possession; citing 1 Washb. Real Prop. 415.

7. Mere possession by one co-tenant is not sufficient to establish ouster and adverse possession, and especially where the co-tenants are brothers and sisters. Some clear, positive, and unequivocal act must be shown which amounts to an open denial of the co-tenants' rights; citing *Dubois v. Campau*, 28 Mich. 304.

Error to Mackinac. (Pailthorp, J.) Argued November 29 and 30, 1892. Decided December 22, 1892.

Ejectment. Defendants bring error. Affirmed. The facts are stated in the opinion.

*James McNamara (Norris & Norris,* of counsel), for appellants.

*Henry Hoffman (C. R. Brown & Son,* of counsel), for plaintiff.

GRANT, J.    On December 21, 1851, one Abraham Wendell died seised in fee of the entirety of the lands here in controversy.    He left seven children, named George, Theodore, Eliza, William, James, Mary, and Josiah.    At that time William, James, Mary, and Josiah were infants. James died in July, 1854, intestate.    George died October, 1879, leaving a will, by which he conveyed his property to Theodore.    Theodore was married in 1869, and died in November, 1879, leaving two children, the infant defendants in this case.    Eliza was married to plaintiff in 1858, and died in January, 1885.    Theodore, prior to the death of his father, had built a house upon the land at his own expense, which appears to have been regarded as personal property, and belonging to him.    This house was occupied by the family as their homestead.    After the death of the father, the children continued to live upon the land as one family, until 1869, except that Eliza left after her marriage to plaintiff.

April 15, 1854, George and Theodore executed a deed to Eliza conveying to her all of their, and each of their, undivided interest, right, and title, as well in possession as in expectancy, of, in, and to the land now in dispute.    This deed was recorded April 18, 1854.    On the same date Eliza executed a deed to George and Theodore of certain lands in Indiana.    The consideration expressed in the deed to Eliza was $275.    On August 23, 1853, Theodore executed to Eliza a bill of sale of the house, the consideration for which was expressed as one dollar, and the natural love and affection he had and bore

towards her, and for her better maintenance, support, and livelihood. December 14, 1881, William and his wife executed a deed to Eliza, in consideration of $500, conveying their undivided share of said property, and all their interest in the share of James, both in possession and expectancy, to the land in dispute. March 6, 1884, Eliza executed a deed to plaintiff, conveying her interest in this land.

It thus appears that by deed and heirship plaintiff had the record title to 13–21 of this land, and the infant defendants to 8–21, subject to their mother's right of dower.

Theodore, upon his marriage in 1869, moved into the house, and from that time until his death had the exclusive occupancy, and the defendants have occupied it since. Upon the death of Theodore, his widow, now the defendant Mrs. Miller, became administratrix of her husband's estate, and guardian of her children.

On March 5, 1880, William, Eliza, Mary, and Josiah joined in a notice directed to and served upon Anna M. Wendell to surrender and deliver up possession of "lot No. 12, on the connected plat of the village of Mackinac, designated and described as the 'Wendell Homestead,' and remove therefrom on the 6th day of June, 1880." She did not vacate, and on June 23, 1880, the four began an action of ejectment against her for possession of the undivided 20–21 of entire lot 12, which description covered more than the land in dispute, but included it. This case was put at issue by a plea of the general issue. This suit has never been tried, but is still pending and undetermined. After it was commenced, William, as already shown, conveyed his interest to Eliza. Josiah and Mary also afterwards released to the defendants their interest in this land in exchange for other land. It thus appears that none of the plaintiffs in that suit were longer interested in its prosecution, since they had all conveyed their interest.

November 23, 1886, plaintiff filed a bill in chancery for the partition of lot 12, in which suit the present defendants were also made defendants. To this bill the defendant Anna interposed a plea of adverse possession, and the other defendants, by their guardian, answered, simply submitting their rights and interests to the protection of the court. The case was submitted upon pleadings and proofs, and the court held that the proceedings must be stayed until the complainant had established his title at law, and that the defendants were entitled to have the question of ouster and adverse possession tried in a court of law. This decision of the court below was sustained by this Court. *Fenton v. Steere,* 76 Mich. 405. It was conceded in that case that complainant had established his co-tenancy and right to partition, unless his title was defeated by ouster and adverse possession.

Subsequent to that decree, and on September 17, 1890, plaintiff brought the present suit. The description of the premises in the original declaration in this case was the same as in the first ejectment suit and in the chancery suit. Upon the trial the plaintiff was permitted to amend his declaration by inserting a description by metes and bounds so as to cover the exact land in controversy, which was a part of lot 12, and to correspond with the proofs. Plaintiff was entitled to verdict and judgment upon his record title, unless defendants had shown an ouster and adverse possession for 15 years prior to bringing suit, provided he himself had shown an ouster within 15 years before bringing suit. Defendants claim that all the other heirs were ousted by Theodore in 1869, when he was married, and entered into possession of the premises, and the other heirs moved out, and that he was thereafter exclusively in possession under an asserted demand of the exclusive right thereto. On the other hand, plaintiff admits

the occupancy, but denies that it was adverse, or that Theodore ever claimed title.

1. Defendants first insist that the record of the deed from Theodore and George to Eliza was not evidence of its delivery, under the circumstances of this case. George was register of deeds, and Theodore was his deputy, at the time the deed was recorded. The deed was in the handwriting of Theodore, and the indorsement of the record upon the back of the deed was also in his handwriting. The court instructed the jury that the burden of proof as to delivery was upon the plaintiff; that the record of the deed by the grantors with the intent to pass title would be a sufficient delivery; that delivery is presumed from the record of a deed, and to avoid the effect of vesting title in the grantee the party questioning its delivery would be called upon by satisfactory evidence to explain away or rebut such presumption. The learned counsel for the defendants concede that this is the general rule, but insist that it does not apply where the grantor, as register of deeds, records it, and, after its record, continues in possession of the land conveyed. We think this point is expressly ruled against defendants in *Glaze v. Insurance Co.*, 87 Mich. 349. It was there held that, where a husband executed a deed to his wife, and recorded it without her knowledge, the record raised a presumption of delivery. See, also, *Patrick v. Howard,* 47 Mich. 40. Did it conclusively appear by the proofs that the grantors retained this deed in their possession, and had never actually delivered it to the grantee, a different question might arise. But there was other evidence on the part of the plaintiff tending to show a delivery to Eliza. This testimony was controverted by the defendants. This evidence was submitted to the jury, the court again instructing them that possession of the deed by Eliza would be

94 MICH.—14.

only *prima facie* evidence of title in her, and that they must determine the question of actual delivery from all the evidence on that point. The charge was correct, and was very full and fair.

2. The defendants gave evidence tending to show that Theodore, upon his marriage, wrote to his brothers and sisters, who were then living in the homestead, that he should bring his wife home with him, and desired that they should give him possession of the homestead, which, as above stated, they substantially did. This letter was not produced, and its contents were not controverted by others of the family. But, according to defendants' evidence, it did not contain any assertion that he was then owner of the land, or that he insisted or claimed any right hostile to theirs. Considering their ownership and relation, this letter, and the compliance of the other children with the request to leave, did not constitute an ouster. Heirs cannot in this manner be deprived of their ownership in land, the entirety of which has descended to them from their father. Until the heir so in possession has done or said something which is unequivocal notice to his co-heirs that he claims the entire property as against them, there can be no ouster and no adverse possession. There was a great deal of testimony bearing upon this question, and tending to support the claim put forth by each party. It is unnecessary to repeat it. The question was clearly one for the jury, and we are only concerned to determine whether any errors were committed upon the trial which operated to the prejudice of the defendants.

The theory upon which the case was submitted to the jury appears from the following portion of the charge:

"It was not necessary for Theodore Wendell to expressly state to this plaintiff's grantors that he did not intend to recognize their right to any portion of this property. If

his conduct was such as to show that it was his intention to no longer recognize their rights to participate in the management of that property, and the knowledge of it was brought home to them, and they should have known by his conduct that he was setting up a claim of exclusive ownership, that notice would be sufficient. A tenant in common cannot be ousted without knowing his title is disputed or his right of entry denied."

The charge was certainly as favorable to the defendants, upon this branch of the case, as the facts justified.

3. How. Stat. § 7812, in regard to ejectment, provides:

"If the action be brought by one or more tenants in common or joint tenants against their co-tenants, the plaintiff, in addition to all other evidence which he may be bound to give, shall be required to prove on the trial of the cause that the defendant actually ousted such plaintiff, or did some other act amounting to a total denial of his right as such co-tenant."

Under this statute the notice and demand for possession served upon defendant Anna, who was then in possession, and the guardian of her children, and her refusal to recognize the rights of plaintiff's grantors in the property, the plea to the first ejectment suit and to the chancery suit, each amounted to a total denial of the plaintiff's rights, and were evidence of ouster. *Bailey v. Bailey,* 36 Mich. 185; Tyler, Ej. 235; *Greer v. Tripp,* 56 Cal. 209; *Spect v. Gregg,* 51 Id. 198; *Noble v. McFarland,* 51 Ill. 226. The objection that the description of the property in the notice and the suits was "lot 12," and therefore that they were not competent evidence of ouster, is without force. The parties certainly understood the property claimed, and in the notice it is significant that the description was qualified by being "designated and described as the 'Wendell Homestead.'" The declaration and the bill would have been amended upon motion as a matter of course, and without costs. Where both parties fully understand the subject-matter in controversy, an erroneous description of

the property will not operate to defeat the effect of a, written document.

4. Defendant Miller was asked by her counsel to state a conversation with Eliza, in which it is claimed that Eliza spoke to her about having Theodore put the homestead in her (Anna's) name. This testimony was excluded by the court as incompetent under 3 How. Stat. § 7545. Counsel concede that such testimony was properly excluded so far as the defendant Miller was concerned, since she is an opposite party within the statute, and the conversation was with plaintiff's assignor; but they insist that it should have been received on behalf of the infant defendants. We think the testimony was within the statute, and properly excluded. Whatever testimony was given by her inured to her own benefit, as well as to the benefit of her children. If one of her children had had a conversation with Mrs. Fenton, it would, under this contention, be admissible on behalf of the mother, though incompetent on behalf of the children. To admit it would be a clear evasion of the statute.

5. It is claimed that the deposition of Mary was erroneously excluded. She testified that during the last sickness of Mrs. Fenton, and about a month before she died, she said to witness that she wanted to have some property that was made over to her in her name to be conveyed to the rightful owners. She said that this referred to what was known as the "Bazaar Property," which had no connection with the land in controversy. It needs no argument to show that this part of the deposition was properly excluded. In response to a leading question by defendants' counsel, witness further said: "She [Eliza] said all the property had been put to her name, and she wanted to convey to the rightful owners; she would like to have it." Even if this conversation should be held to include the property in question, still it was made nine months after Mrs. Fen-

ton had deeded the land to plaintiff, and was therefore incompetent for the purpose of impeaching his title.

6. The next objection is to the exclusion of the record of six deeds which were executed between the various children of Abraham Wendell, but none of which relate to the property in question. The precise complaint appears to be that, although the record of these deeds in Mackinac county was a nullity, since the lands conveyed were not situated in that county, yet they should have been admitted, because the record of the deed from Eliza to George and Theodore was admitted, although the record was a nullity. No objection was made to the admission of the record of this deed, and we need not discuss whether its admission would have been proper under objection. But, aside from the question of the record of these six deeds, we are unable to see that they throw any light upon the controversy here, while it is certainly a natural inference that the deed from George and Theodore to Eliza was in consideration of the deed from her to them, and would also tend to rebut the claim of defendants that George and Theodore were at that time in financial distress, any therefore deeded this land to Eliza.

7. It is claimed that the court erred in admitting in evidence the bill of sale of the house, for the reason that no delivery thereof to Eliza was shown. This document had two witnesses, in whose presence it was stated to be "signed, sealed, and delivered." On its back was the following: "Bill of sale. Aug. —, 1853. Received for record August 23, 1853, at 3:06 p. m., and recorded in Liber ——." This indorsement was shown to be in the handwriting of Theodore. It appears to have been found among other papers in a safe which was used in common by George, Theodore, and William, and after all three were dead. This safe was in the store of William. George and Theodore had an office on the second floor over the

store. After the death of William, his widow found this bill of sale in the safe among other papers apparently belonging to Eliza, all of which she gave to Mr. Fenton. Considering the character of this instrument, the recitals it contained, the manner of its execution, and the indorsement upon the back, we think it was competent evidence for the jury to consider in the light of the other testimony. It was distinctly stated by plaintiff's counsel, when the instrument was offered, that they did not introduce it to prove title, and that they should not argue that they claimed title to the house. Its effect was limited to a contradiction of the claim made by the defendants, who had introduced the books and receipts left by Theodore to show that he built the house and therefore owned it.

8. The case was submitted to the jury upon the assumption that the parties were tenants in common of this land. We do not think the court erred in this respect. By the death of Abraham his children became tenants in common, each owning an undivided one-seventh interest. These interests were afterwards changed by death and by conveyance; but by these changes each continued to own an undivided interest. Each was entitled to possession jointly with his co-tenants. Their interests at all times possessed the attributes of a tenancy in common, which exists—

"Where two or more hold possession of lands or tenements at the same time, by several and distinct titles. The quantities of their estate may be different, their proportionate share of the premises may be unequal, the modes of acquiring these titles may be unlike, and the only unity between them be that of possession." 1 Washb. Real Prop. (4th ed.) 652 (*415).

Upon this theory the partition suit was tried, and was held in abeyance until the question of title by adverse possession should be determined at law.

9. After the commencement of the first ejectment suit, in 1880, two of the plaintiffs conveyed their interests to

the defendants, and one to Eliza, plaintiff's grantor, as already stated. This was a practical abandonment of that suit, and was evidently so regarded by the parties, as neither afterwards took any steps to bring the case to trial. But it is unnecessary here to determine the *status* of that case. The defendants did not plead it as a bar to the present action, and it therefore cannot now serve that purpose. Its only office in the present case is to show an ouster by the defendants.

10. The court was requested to direct a verdict for the defendants. The refusal to do so was correct. The only ground for such an instruction is the fact that Theodore was in the exclusive occupancy of the premises from 1869 to the time of his death, in 1879. But mere possession by one co-tenant is not sufficient to establish ouster and adverse possession, and especially where the co-tenants are brothers and sisters. Some clear, positive, and unequivocal act must be shown which amounts to an open denial of the co-tenant's rights. *Dubois v. Campau*, 28 Mich. 304, and note, 2d ed. Acquiescence by brothers and sisters in the possession of the homestead of their parents by another brother or sister, who is a tenant in common with them, is no evidence of ouster or adverse holding. Other acts must be shown which would characterize such holding as hostile to the others' rights, and which would rebut the presumption that he holds possession for the benefit of all. Upon such acts in this case there is a radical difference in the evidence, and upon these the jury have found for the plaintiff.

Judgment affirmed.

The other Justices concurred.