## GRIFFIN v. HOVEY.

1. JUDGMENT—ESTATES OF DECEDENTS—EXECUTORS AND ADMINISTRATORS—CLAIMS—ALLOWANCE—EQUITY—COLLATERAL ATTACK.

The allowance of a claim against a decedent's estate cannot be attacked collaterally by bill in equity: the remedy is by appeal to the circuit court.

2. EQUITY—EXECUTORS AND ADMINISTRATORS—SETTING ASIDE INSTRUMENTS—DEEDS—FRAUDULENT CONVEYANCES.

A bill may be maintained by the executor or administrator of an estate to set aside conveyances of real property made by the decedent and for an accounting from tenants of decedent under an agreement to support him and his wife; to obtain assets sufficient to satisfy claims which have been allowed against the estate.

3. SAME—DELIVERY—PAROL CONTRACT.

Evidence considered, and *held*, to establish a parol contract to convey lands to decedent's son in consideration of his care and support, upon the death of the father and mother.

4. SAME — CONVEYANCES — LIFE ESTATE — SUPPORT AND MAINTE-
NANCE.

> There was no such inconsistency in a clause in the con-
> veyances of decedent reserving the right to occupy and
> control the premises during the life of the grantors, and
> providing that the deeds should take effect after their
> death, as that the contract to convey in consideration of
> care and support of the father and mother was thereby
> invalidated.

5. SAME—DELIVERY.

> The grantors' act in having the deeds recorded during
> their lifetime was the equivalent of and amounted to a
> valid delivery.

Appeal from Shiawassee; Miner, J. Submitted
October 14, 1913. (Docket No. 35.) Decided March
26, 1914. Rehearing denied June 5, 1914.

Bill by Alonzo Griffin, as administrator of the
estate of Henry O. Hovey, deceased, against Hiram
E. Hovey and Chloe M. Durham for the annulment of
certain deeds. From a decree for defendants, com-
plainant appeals. Affirmed.

*S. Q. Pulver (John B. Corliss,* of counsel), for ap-
pellant.

*Louis E. Howlett,* for appellee Hovey.

KUHN, J. The bill of complaint in this case is filed
in the name of the administrator of the estate of
Henry O. Hovey, deceased, for the purpose of setting
aside two deeds made by Henry O. Hovey and his
wife, one of which conveyed a farm of 100 acres to
the defendant Hiram E. Hovey, a son, and the other
a farm of 80 acres to the defendant Chloe M. Dur-
ham, a daughter. The bill also prays for an account-
ing on the part of Hiram E. Hovey of the proceeds
and profits of said farms from the year 1890, when
he assumed the management thereof, until July, 1911,
when Henry O. Hovey died, leaving a widow and

three children.  Both of the farms in question were
given to Henry O. Hovey by his brother, and it does
not appear that he accumulated any property him-
self.  His health had been poor from about the time
Hiram took control, being afflicted with a cancer on
his face, which finally resulted in his death.  The
deeds in question were drawn by Dr. A. G. Cowles,
a notary public, in 1892, and recorded on April 25,
1894.  They were left with Cowles from the time of
execution until the time of recording, then returned
to him and held until the time of Henry O. Hovey's
death.  Each deed contained the following reserva-
tion:

"The parties of the first part hereto reserve the use,
occupancy, and control of said premises to them-
selves, or to the survivors of either of them, so long
as they or either of them shall live; and this convey-
ance is not to take effect until the death of both of
said first parties."

In addition to the two defendants, there was a
third daughter, Cora M. Hovey, who had an unfor-
tunate marriage resulting in her obtaining a divorce.
She has maintained herself since that time, residing
for the most part in Detroit, where she conducted a
rooming house.  In 1908 the father, desiring special
medical treatment, came to this daughter's home in
Detroit and remained with her 24 weeks.  Nothing
was paid to Cora for care, room, and board of the
father during this time, although Hiram paid the
doctor's bill.  The widow having made no application
for administration of her husband's estate, after a
period of 30 days the daughter Cora filed a petition
for administration, which resulted in the appoint-
ment of the administrator and commissioners on
claims.  To the latter she presented a claim, which
was allowed, in the sum of $360, on July 15, 1912.
This bill was filed August 16, 1912, and an appeal
was taken from a determination of the commissioners

on September 11, 1912. The claims of the defendant Hiram E. Hovey, which present the questions raised on this appeal, are stated by his counsel as follows:

"Defendant Hovey contends as follows:

"*(a)* That the complainant is in no position to file this bill of complaint, inasmuch as her claim has not been finally allowed, and there being no other claims against said estate.

"*(b)* That he occupied and possessed these farms under an express agreement with his father, which entitled him to the rents, profits, and revenues of the farms, if any, after supporting the family, paying the taxes, repairs, and improvements of the farms, and providing all the necessities of life for the various members of the family.

"*(c)* That the deeds in question were properly executed and delivered, and conveyed the title to the lands described therein to the respective grantees therein named."

At the time the bill of complaint was filed, the claim of Cora Hovey had been allowed, and no appeal had been taken. The validity of her claim cannot be attacked in this proceeding, but must be tried on appeal in the circuit court. This court has recognized the right of an administrator to seek relief in equity for the purposes stated in this bill of complaint. *Graham* v. *Graham*, 171 Mich. 307 (137 N. W. 153).

The arrangement under which Hiram assumed the control and management of the farm, it is claimed, was made in 1890. He had arrived at the age of 18 years, and it is his claim that he was contemplating starting out in the world for himself when he made the arrangement which resulted in his remaining on the farm at the request of his father and mother. The testimony of the mother, which is uncontradicted, as to this arrangement is as follows:

"*Q.* Was there any arrangement between Mr. Hovey and Eben when he took charge?
"*A.* Well, yes.

"*Q.* If you will state to the court what the arrangement was.

"*A.* Well, of course we didn't have anybody only as we depended on strangers, and we told him to go on and take care of things, and look after things, and take charge of everything, and take care of us, and do what he could, and all outside of keeping us and paying the debts and everything he could have.

"*Q.* That was the arrangement?

"*A.* Yes, sir.

"*Q.* Was there ever any other arrangement after that that you know of?

"*A.* No; not that I remember of."

This arrangement seems to have met with the approval of the parties in interest. Hiram did not keep any account of the receipts of the farms or his disbursements. He was never asked to account by the father during the 21 years that they lived together, and no claim of an indebtedness was ever made by the father against him. During these years he paid his father's indebtedness, amounting to about $800, paid his father's doctors' bills and all family expenses, and made considerable improvements on the farm. The daughter Chloe remained at home until she was 28 years of age, when she married, and her education and maintenance were provided for the most part from the common fund. No claim is made otherwise, and we are convinced that the father and mother received sufficient support and were provided with such comforts as they in their station in life were accustomed to. The expenses of the father's last illness, his burial expenses, and a suitable monument over his grave have been provided for.

When contracts of this character are based entirely upon parol evidence, the proofs in support thereof should be strong and convincing. That the agreement testified to by the mother was entered into finds its strongest support in our minds in the fact that it was acquiesced in for a period of 21 years by the

parties without friction. It is urged that the reservation in the deeds expressly negatives the intent of the father to make such a contract as the one relied upon. The provisions in the deeds are not necessarily inconsistent with the agreement. When the deeds were made, the use, occupancy, and control of the farms were reserved, which gave them the right to discontinue the agreement at any time that they became dissatisfied. The record is convincing that it was the intent of the father that the son was to have what was left after taking care of him and the mother. The son has carried out his part of the agreement without criticism, and he should not now be deprived of that which is equitably and legally his due.

The sole question as to the validity of the deeds is whether or not there was a valid delivery. Dr. Cowles testified that while he was at Mr. Hovey's house giving him medical treatment, about two years after the execution of the deeds, he received the following instructions from Mr. Hovey:

"*A.* Mr. Hovey said to me, 'I wish you would see to having Ebe's and Chloe's deed recorded.' I said, 'I will bring them down, and they can send them, or they can come and get them.' Mrs. Hovey spoke again and said, 'Why don't you have Doc and send them right to Corunna and have them recorded there? He knows how.' I was going to Corunna the next day, and under the circumstances took the deeds, got them recorded."

This testimony is undisputed. The deeds were recorded as directed, and this act of the father in causing the deeds to be recorded amounts to a valid delivery under the decisions of this court. *Compton* v. *White,* 86 Mich. 33 (48 N. W. 635) ; *Glaze* v. *Insurance Co.,* 87 Mich. 349 (49 N. W. 595) ; *Fenton* v. *Miller,* 94 Mich. 204 (53 N. W. 957) ; *Holmes* v.

*McDonald*, 119 Mich. 563 (78 N. W. 647, 75 Am. St. Rep. 430).

The decree of the court below dismissing complainant's bill of complaint is affirmed, with costs.

MCALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.