## SPRUNGER  v.  ENSLEY.

1. DEEDS—WILLS—CONSTRUCTION.

Whether an instrument conveying a life estate to grantor's son, and the remainder to the latter's heirs, to take effect at the death of the grantor, was a deed or a will, *held*, unimportant, after the grantor's death, where it was reaffirmed in his will, subsequently made, and the parties affected reaffirmed the same by contract in writing after grantor's death.

2. SAME.

*Held*, that, by the provisions of said instrument, grantor's son became the owner of a life estate, and at his death the fee vested in the heirs of his body.

3. SAME — EXECUTORS AND. ADMINISTRATORS — TITLE TO LAND — ESTOPPEL.

Where the executor of an estate attempted to convey land in which the testator had only a life estate, the fee vesting in the children, some of whom were minors, they would not be estopped, as against the grantees in the executor's deed, from claiming the land because they had received their distributive share of their father's estate, since real estate cannot be conveyed by estoppel in this State.

4. SAME—DELIVERY—RECORDING DEED—PRESUMPTIONS.

The delivery of a deed, in the absence of testimony to the contrary, will be presumed by the recording thereof.

5. SAME—INTENTION—DELIVERY.

In determining whether an instrument is a deed or a will, the manifest intention of the parties making it, as gathered from all the language used in the writing, is controlling, and where it was recorded as a deed, thereby implying delivery, it may well be urged that it operated as a deed.

6. SAME—TO TAKE EFFECT IN FUTURE—DELIVERY—VALIDITY.

A conveyance of land to take effect at a future time is valid, when delivered.

On delivery of deed to third person or for record by grantor, as a delivery to grantee, see notes in 54 L. R. A. 865; 9 L. R. A. (N. S.) 224; and 38 L. R. A. (N. S.) 941.

7. SAME—CONSTRUCTION—INTENTION.
    In construing deeds the intention of the parties is the fundamental inquiry.

Appeal from Newaygo; Barton (Joseph), J. Submitted April 21, 1920. (Docket No. 52.) Decided July 20, 1920.

Bill by Eli Sprunger and others against William B. Ensley, Jr., and others, to enjoin an action of ejectment and to quiet title to land. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Ellis & Ellis* (*L. C. Palmer*, of counsel), for plaintiffs.

*William J. Branstrom*, for defendants.

STONE, J. This is an appeal by plaintiffs from a decree dismissing the bill of complaint filed to restrain defendants from prosecuting a pending action in ejectment, and to quiet the title of the plaintiffs in and to the northeast quarter of the northeast quarter of section 12, township 11 north, range 11 west, being in Newaygo county.

On March 10, 1857, Benjamin Ensley acquired title in fee to the lands from the United States. On March 13, 1874, the said Benjamin Ensley, then a widower with 6 children, made an instrument in writing, claimed by the defendants to be a deed, conveying the land above described to his son, William B. Ensley, for life, with the remainder over to the heirs or heir of said William B. Ensley. The said instrument was in part as follows:

"This indenture, made the thirteenth day of March A. D. 1874, between Benjamin Ensley of Ensley, Newaygo county, Michigan, party of the first part, and Nettie Ensley, William B. Ensley, Loraine Ensley,

Eliza A. Ensley, Mariah E. Holmes and Benjamin F. Ensley, of the said place, parties of the second part, witnesseth: That the said party of the first part in consideration of natural or parental affection and for a valuable consideration, receipt whereof is hereby acknowledged at or before the ensealing of these presents, hath granted, bargained and sold, aliened, remised, released, conveyed and confirmed and by these presents doth grant, bargain, sell, alien, remise, release, convey and confirm unto said parties of the second part and to their heirs and assigns forever the following real estate, to wit:"

(Here follows a description of certain parcels of land in Montcalm and Newaygo counties not involved in this suit.)

"The aforesaid grant of lands is upon the following conditions and is not to become operative until after the decease of the said party of the first part, and not then until after a complete compliance with the following conditions:

"1st. The said parties of the second part shall purchase and erect or cause the same to be done, a marble monument over my grave, to be worth at least the sum of five hundred dollars, on which said monument shall be properly inscribed the name of my deceased wife, Mary Eliza Ensley, also my own name, together with proper dates to the ages and deaths of the said Mary Eliza Ensley and myself, the said party of the first part, which shall be a condition precedent to the vesting of the fee in the said described lands in the said parties of the second part to this conveyance who shall be equal owners in amount and interest in said described lands.   *   *   *

"The said party of the first part for a like consideration hereby grants and conveys to the said William B. Ensley, one of the parties of the second part to this conveyance, a life estate, the same to be an estate in fee simple for the heirs of the said William B. Ensley, and in the event of his death without heirs or heir then to vest in all of the said parties of the second part, the same as the aforesaid described parcels of land conveyed to all of said parties of the second part, said land described as follows, to wit: The northeast quarter of the northeast quarter of section number twelve (12), in township eleven (11) north of

range number eleven (11) west, Newaygo county, State of Michigan, said grant of land subject to all the conditions of the aforesaid grant of land to all of said parties of the second part. * * *

"All of the aforesaid grants of land include all and singular the hereditaments, tenements and appurtenances thereunto belonging and in anywise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof, subject to the aforesaid conditions. To have and to hold all and singular the above mentioned and described premises as the same are herein set forth and described with the said appurtenances unto the said parties of the second part, their heirs and assigns as aforesaid.

"In witness whereof the said party of the first part has hereunto set his hand and seal the day and year first above written."

Forty acres were conveyed to each of the other five children named in the instrument. This instrument was witnessed by two witnesses, and on the day of its date the grantor duly acknowledged the same to be his free act and deed before a notary public of Montcalm county, Michigan. The said instrument, with said certificate of acknowledgment, was recorded in the office of the register of deeds of Newaygo county on the 5th day of May, 1874, in liber 18 of deeds, at page 116; and the same was recorded in the office of the register of deeds of Montcalm county on June 1, 1874.

On June 21, 1887, said Benjamin Ensley (having married a second wife by the name of Lucinda) made a last will and testament, in which he referred to the said deed as follows:

"Fourth. I give and devise to my said wife all real estate within the county of Montcalm, in the State of Michigan, of which I may die seised, except the lands heretofore conveyed by me to the children of myself and a former wife, which deed is to become operative after my decease."

The said Benjamin Ensley died on December 12,

1889, and after his death the said will was admitted to probate and allowed as a last will and testament.

On September 1, 1888, more than a year after making said will, and more than 14 years after the said deed was executed and recorded, the said Benjamin Ensley commenced a suit in the circuit court for the county of Newaygo, in chancery, against his children, the grantees in said instrument, to set aside said deed. The bill of complaint in that case is made a part of, and incorporated in, the bill of complaint in this case.

At the time of the death of said Benjamin Ensley said suit was still pending, and on the 30th day of June, 1890, it was revived in the name of the executor of the estate of Benjamin Ensley, deceased.. On said June 30, 1890, by consent and approval of the parties in interest, there was filed in said chancery suit a certified copy of the last will and testament of Benjamin Ensley and of the probate thereof, and thereupon a decree was entered dismissing said suit.

At the time of the dismissal of said chancery suit, the parties named as defendants therein, being the 6 grantees in said deed, and the executor of the estate of Benjamin Ensley, deceased, and Lucinda Ensley, as widow of said Benjamin Ensley and as guardian of her 4 minor children, entered into a certain written contract. It is asserted by the defendants that by said contract the owner of the life estate to the premises herein involved attempted to deprive the remaindermen (the defendants here) of their title to the fee of said premises. That contract contained the following provisions:

"Whereas, on the 13th day of March, 1874, Benjamin Ensley, now deceased, executed and acknowledged a deed to his six children, therein named, of certain lands in Newaygo and Montcalm counties, in the State of Michigan, to become operative on his decease, upon the erection, by them, of a monument as therein specified, which deed was recorded in the office of the regis-

ter of deeds of Newaygo county on May 5, 1874, in liber 18 of deeds, at page 116, and in the same office in Montcalm county on June 1, 1874, in liber 30 of deeds, at page 577, to which deed and record thereof reference is had for greater certainty, and the same is made a part of this agreement so far as may be necessary to its proper construction and execution. And whereas, in July, 1888, the said Benjamin Ensley filed a bill in the circuit court for the county of Newaygo, in chancery, against said grantees as defendants, to set aside said deed, for reasons stated in said bill, to which said bill reference is had for greater certainty; and whereas, such proceedings were thereafter had in said suit as resulted in the appearance of said defendants, except William B. Ensley, and the joining of issues upon their answers filed to said bill, the same being taken as confessed as to said William B. Ensley, and the trial thereof by the examination of witnesses in open court in January, 1889, since which trial no further steps have been taken therein.

"And whereas, said Benjamin Ensley has departed this life, leaving a last will and testament, in and by which he devised to his second wife, Lucinda Ensley, and to her children, and to said William B. Ensley, all of his property, both real and personal, not disposed of by said deed, which instrument is referred to and recognized in said will as a valid conveyance to become operative at his death; and whereas, an executor has been appointed who has inventoried the lands described in said deed as a part of the estate of said testator, and has taken possession of and assumed control of said lands, except the homestead of 40 acres which was conveyed to William B. Ensley in said deed and has been occupied by the widow of said testator, and said William B. Ensley since his death; and whereas, soon after the execution of said deed said Benjamin Ensley erected, near the center of the cemetery lot owned by him and in which his first wife was buried, a monument of the same character and description as the one provided for in said deed, and upon which he placed the like inscriptions as are provided for in said deed as far as it was possible to place them prior to his death." * * *

The instrument then provides for the conveyance

by the parties of the first part to Lucinda Ensley of certain lands, not including the premises in question. And the said Lucinda Ensley therein agreed to convey to the first parties all of the personal interest she then claimed, or could claim in the way of dower and homestead rights, or otherwise, in the six 40 acres of land conveyed by said deed to said first parties in severalty, reference being had to said deed for greater certainty as to description; provided for the expending of a sum of money upon the cemetery lot and the division of the payment thereof. And it was further agreed that the parties to said agreement mutually agreed to quitclaim to each other, all of the interest that they might or could claim as heirs at law of said Benjamin Ensley in the respective 40-acre lots conveyed to each of them in said deed, the intent being to perfect, as far as possible, the title to each of his or her 40 acres of land.

The defendant William B. Ensley, Jr., was born more than 30 days prior to the time of the execution of said contract. He was not a party thereto, although it is claimed by the defendants that he was a remainderman vested with a title to the fee in the lands described. The other defendants, all being children of William B. Ensley, were born subsequent to June 30, 1890, and one of them is still a minor. The said William B. Ensley, Sr., the grantee and son of said Benjamin Ensley, continued in possession of the 40 acres here involved until his death.

On August 13, 1903, the said William B. Ensley, Sr., father of the defendants in this case, died testate; and it is the claim of these defendants that he was the owner of a life estate only, in and to the land involved in this suit, and that he got nothing by the several quitclaim deeds given to him by his brothers and sisters, and other parties to the said contract; and it is the further claim of the defendants that the

remaining estate, or the estate in fee, is now in these defendants.

The will of William B. Ensley, Sr., left a considerable estate of real and personal property, and provided for the appointment of Stephen C. Scott as executor, with full power to sell and convey any or all of his estate, both real and personal, without obtaining license from any court for that purpose; and it also appointed the said Scott guardian of the minor children, being the defendants in this case.

The land in question was inventoried in the estate of William B. Ensley, Sr., deceased, as belonging to his estate.

On May 2, 1907, the said Stephen C. Scott, as executor of the estate of William B. Ensley, Sr., deceased, attempted to sell and convey the lands here involved, by the execution and delivery of a deed of the same to the plaintiffs, or some of them. That deed was signed and executed by Scott as executor of the estate of William B. Ensley, Sr., deceased, and contained the following provision: "By virtue of the authority given in the will of deceased." The plaintiffs claim title to said land by virtue of said executor's deed. The defendants claim title thereto by virtue of the deed of Benjamin Ensley, from which we have quoted.

On September 17, 1910, Stephen C. Scott died, and one Charles W. Withey was thereafter appointed administrator *de bonis non* of the estate of William B. Ensley, Sr., deceased, and as guardian of the three minor children, defendants herein. On or about the 23d day of September, 1912, the probate court of Montcalm county made an order assigning the residue of the estate of William B. Ensley, Sr., deceased, and these defendants received their respective shares of said estate. The records and proofs conclusively show that no petition for license to sell the real estate owned by these defendants, being the children of William B.

Ensley, Sr., deceased, was ever filed in the probate court, or any other court having jurisdiction.

At the time the plaintiffs were negotiating with said Scott for the purchase of the land involved they had a copy of the abstract of title to said lands, which showed the true condition of the title of record. The testimony in the case has reference to 160 acres of land, whereas there are only 40 acres here involved. It will be noted, by an examination of the record, that there was no evidence introduced of the testimony, if any was ever taken, in the chancery case commenced by Benjamin Ensley, and dismissed after his death. The record shows that the bill was an unsworn bill, and the name of Benjamin Ensley was signed thereto by his solicitor. In our opinion this bill has no probative force as evidence in the case; having been dismissed it was as though it had never been filed.

Claim was made by plaintiffs that the defendants, having received their distributive share of the estate of their deceased father, thus having the benefit of the proceeds of the land in question, they are estopped from asserting any claim to the lands here involved. Not only were some of these defendants minors when the estate was distributed, but they would not be estopped from asserting their interest in the land in question and thereby be deprived of the legal title, if any they received by virtue of the deed of Benjamin Ensley, as real estate cannot be conveyed by an estoppel in this State. The doctrine of estoppel has no application here.

It is an important fact that the instrument, set forth herein, was recorded as a deed, and from such recording a delivery will be presumed, in the absence of testimony to the contrary, and there is no contrary testimony in this record. A delivery of a deed will be presumed by the recording thereof. *Sessions* v. *Sherwood,* 78 Mich. 234; *Fenton* v. *Miller,* 94 Mich.

204; *Holmes* v. *McDonald*, 119 Mich. 563; 18 C. J. pp. 207, 208, §§ 110-113.

The learned circuit judge who heard the testimony in this case filed his decision in writing, and after a careful review of the evidence, we find ourselves so much in accord with his views and conclusion that we insert and adopt his opinion as a proper disposal of the case. That decision is as follows:

"The issue here concerns, as I see it, the northeast quarter of the northeast quarter of section 12, town 11 north, range 11 west, Ensley township, of this county. The testimony in this case shows a patent was issued by the United States Government to Benjamin Ensley on the 10th day of March, 1857, and recorded in the office of the register of deeds of Newaygo county on the 7th day of April, 1860, liber 4, page 544. By this instrument the title passed from the Government to the deceased, Benjamin Ensley, and remained in him without question, so far as the evidence is concerned, until 1874, at which time he executed an instrument, claimed by one side in this controversy to be at least in part a devise; claimed by the defendants herein to have been a deed. It is not necessary for me in the determination of this case, I do not think, to find specifically whether or not it should be designated and determined by this court to be either a deed or a devise. It would be my duty, however, to bear in the mind the evidence as to the manner in which it was treated by those whom it affected, and whose rights were affected thereby.

"This instrument was recorded in the register of deed's office of the county of Newaygo. Subsequently, and in 1887, Benjamin Ensley made a will, in which he used language referring to a deed. The testimony in the case discloses no other deed, and I assume it established by the evidence, where reference was made to a deed, or such instrument, at least which he terms that instrument in his will to be a deed, that there was no other deed, and therefore it must have been the instrument to which he referred.

"By that deed or instrument, William B. Ensley, now deceased, became the owner of the life estate, no more, no less, of the N. E. quarter of the N. E. quarter

of section 12.  Subsequently, and in 1888, Benjamin Ensley filed a bill to have set aside and held for naught the instrument which has been referred to here as a deed and will.  Subsequently, by stipulation, and after testimony had been taken pro and con, the bill was dismissed, a contract entered into whereby the direct heirs at law, all being enumerated and designated as the heirs of the body of Benjamin Ensley, engaged to carry out as they said by the language of the contract the provisions of that instrument which they termed and designated and treated in that contract as a deed, which language I find in the contract, as follows:

" 'Whereas, on the 13th day of March, 1874, Benjamin Ensley, now deceased, executed and acknowledged a deed to his six children, therein named, of certain lands in Newaygo and Montcalm counties, in the State of Michigan, to become operative on his decease, upon the erection by them of a monument as therein specified,'—

"which deed was recorded in the office of the register of deeds of Newaygo county, May 5, 1874, and referring to the liber and page; referring also to the date of record in Montcalm county and the liber and page thereof.  The same was made a part of this agreement so far as may be necessary for its proper construction and execution.  It was apparent that the heirs of Benjamin Ensley recognized that instrument as a deed; they relied upon it in what they did subsequently, and, perforce, must abide by the law and be bound by its provisions.  Now its provisions created a life estate in William B. Ensley, no more, no less, and the fee in the heirs of his body at his decease.  Before his decease he had four heirs in being, the defendants in this case.  No act of William B. Ensley or of the other heirs of Benjamin Ensley could change that fact.

"The evidence here shows that subsequently the executor of William B. Ensley's estate inventoried the N. E. quarter of the N. E. quarter of section 12 as the property of William B. Ensley in fee; it was treated as his estate by the executor; that a deed was made by the executor conveying to certain of these plaintiffs the title, which, as I see it, is void, and could not bind these defendants.

211—Mich.—8.

"There was listed certain personal property and a sale made of it; distribution was made; an order of distribution was made and distribution had thereunder to the heirs of William B. Ensley.

"There was offered in evidence in this case an abstract of title to this land. This, as I see it, is notice to all who are interested in the title, and relying thereon, of the fee being in these defendants. It is admitted by one of the plaintiffs in this case while on the stand that these abstracts were furnished, and that he took them to his counsel, I think he said in the city of Grand Rapids, to have them examined; they were examined, and he, relying upon the report made, made the purchase. That Mr. Gillig, one of the plaintiffs in this case, was furnished these same abstracts. Ignoring their condition and paying no attention whatsoever to what was contained in the abstracts, he bought the property, but admitted that these abstracts were furnished him.

"It is the contention of plaintiffs in this case that by reason of the defendants having received their portion of their father's estate through the administration of the probate court, they are equitably estopped. * * *

"These defendants are not estopped; and they have maintained at all time, in good faith, as admitted by the plaintiff on the stand, Mr. Sprunger, that he received notice from the elder of these defendants of their claim, and that he ignored it and said it was of no account; did not even preserve the letter, and hasn't it here today. These plaintiffs have been guilty of gross neglect in the examination and ascertainment of what was brought to their notice, and they are bound thereby, and it is not an equitable estoppel in this case as I see it, and therefore I conclude that plaintiffs herein have not established an equitable right, have not sustained their bill of complaint, and therefore there will be a decree dismissing it."

It was the view of the circuit judge that whether said instrument was a deed or a will was unimportant, from the fact that in any view of the case the title to the property in fee passed to the defendants herein. If this instrument were to be termed a devise, it may

be said that the disposition of the property involved was reaffirmed in the subsequent will of Benjamin Ensley, to which we have referred; and it might be further claimed that all of the parties interested in the estate of Benjamin Ensley reaffirmed the terms of said instrument by the contract of June 30, 1890.

In determining whether the instrument is a deed or a will, the manifest intention of the parties making it, as gathered from all the language used in the writing, is controlling. It may be well urged here that, upon this record, and the fact that this instrument was recorded as a deed, thereby implying delivery, the same operated as a deed.

The supreme court of Arkansas, in *Sutton* v. *Sutton* (Ark.), 216 S. W. 1052, as recently as December, 1919, held that an instrument in the form of a warranty deed, headed "warranty deed" and referred to in the body of the instrument and in acknowledgment as a "deed" conveying land to grantee, "and unto his heirs and assigns forever," was a deed and not a will, notwithstanding the *habendum* clause making the deed inoperative prior to the grantor's death. It was held that such clause did not defeat the passing of title, but merely reserved possession to the grantors during their lifetime.

That a conveyance of land to take effect at a future time is valid when delivered, see the following cases: *Jones* v. *Caird*, 153 Wis. 384 (141 N. W. 228, Ann. Cas. 1914A, 88); *Sharp* v. *Hall*, 86 Ala. 110 (5 South. 497); *Phillips* v. *Lumber Co.*, 94 Ky. 445 (22 S. W. 652); *Wall* v. *Wall*, 30 Miss. 91.

Also to the effect that in construing deeds the intention of the parties is the fundamental inquiry. *Bassett* v. *Budlong*, 77 Mich. 338.

It will be noted that at the time of the execution and recording of the deed from Benjamin Ensley to his son, William B. Ensley, the defendants were not in

being. It was provided, however, that in case the said William B. Ensley died without heirs or heir, that the fee should go to his brothers and sisters named in the deed as grantees of other descriptions of land.

There being no question that the defendants are the children and heirs of the body of William B. Ensley, Sr., we think the decree of the court below should be affirmed, and the same is affirmed, with costs to the defendants.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.