## KURZ, Respondent, vs. MILLER, Appellant.

*January 12 — February 5, 1895.*

*Adverse possession: Evidence: Instructions to jury*

1. Every presumption will be made in favor of the true owner as against one claiming by adverse possession.

2. Possession, to be adverse, must be actual, open, continuous, and under claim of right as against the true owner, and of such a nature as to apprise such owner, if in charge of the property and in the exercise of reasonable diligence, of the fact of the adverse claim.

3. In trespass for the cutting of willows which grew on a narrow strip of marsh land running east and west between two ditches, one of the questions was whether plaintiff, who owned the farm to the south, had acquired title to such strip by adverse possession. He had planted the willows in 1871 and 1873 as a wind-break, and had built a fence south of them to keep his cattle from them. Defendant purchased the farm to the north in 1874, without notice that his grantor and the plaintiff had agreed· upon the north ditch as the true division line, and it did not appear that he was ever informed who had planted the willows. In 1891 plaintiff cut some of the willows and defendant carried them away, and in 1893 defendant cut and carried away the rest. There was no actual cultivation or use by the plaintiff of the strip in question, and no evidence that any of the willows were cut or claimed by plaintiff before 1891, or that he made any open or specific claim of title to the strip of land, or that the line had become the subject of consideration between the parties before that time. *Held,* that it was error to instruct the jury that the fact that the plaintiff planted the willows up to the south of the north ditch, protected them by a fence from cattle, and always claimed them as his own, and the right to cut them, and did cut some of them, *considering all the circumstances of the case and the nature of the land at that place,* was sufficient to constitute adverse possession of the land up to the north ditch.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This action is for trespass to the plaintiff's freehold, the N. E. ¼ of the S. W. ¼ of section 36 in the town of Nepeus-

Kurz vs. Miller.

kun, January 15, 1893, and for cutting down and carrying away certain willow trees thereon; and the answer was a general denial. It appeared that the defendant owned the S. E. ¼ of the N. W. ¼ of the same section, adjoining the plaintiff's forty on the north, which he had purchased of one Kuderling, April 11, 1874; and the matter in dispute is one of boundary between the respective tracts, the defendant claiming that the place where he cut the trees was on his own premises.

The land was marsh or meadow land, and the plaintiff gave evidence tending to show that he and Kuderling, in 1871, when the latter was owner of the premises he afterwards sold to the defendant, agreed upon a line between that tract and the plaintiff's forty to the south of it; that the line agreed on was according to surveyors' stakes then existing on the east and west, and that a ditch was afterwards dug on the east half of the line so agreed on, and that the plaintiff planted willows on the south side of the ditch, along the easterly half of the line, and that a ditch fence was built in 1871 on the west half of the line, and, if it extended eastward, it would have run on the line between the premises Kuderling sold and the plaintiff's forty as claimed by the latter; that the plaintiff had been in possession of his forty since 1866, and cultivated five acres of it, and pastured cattle and made hay on the rest, and put in some willows; that the ditch was eighty rods long and two feet deep, and the willows were planted one and one-half feet south of the line, for a distance of twenty-five rods in 1871, and five rods in 1873; that the plaintiff's cattle pastured up to within ten feet of the south side of the willows, and a wire and board fence had been put along to prevent them getting any nearer, but on the west part of the line his cattle had pastured up to the ditch; that the plaintiff cut some of the willows down in 1891, and the defendant took them away, and that the defendant cut down and carried away

the rest in January, 1893; that the willows were planted for a protection against the wind, and that there was another ditch about ten feet south of the one mentioned, dug before the plaintiff purchased his land, and that it had been afterwards cleaned out to carry off the water; that it ran pretty near the same distance as the willows, and there had been a fence between the ditches; that the plaintiff never cultivated the land where the willows were put out until 1891; that the plaintiff and Kuderling, when they dug the ditch, believed it was on the line. Plaintiff's two sons testified that they could remember back twenty years; that there had during that time been two ditches on the easterly portion of the line, and the willows were between these ditches, which were about ten feet apart; that the occupation and use of the plaintiff's forty had only been up to the southern ditch south of the willows, and that no one had occupied the space between the ditches for twenty years, to their knowledge; that the defendant occupied and used the land up to the north ditch, and there was evidence that, about fifteen years previous to the action, there was a conversation between the parties as to where the defendant should put his fence on the west half of the line; that the plaintiff told him he should put it on the north side of the ditch, just as he had put his willows on the south side; and that he built a fence there accordingly, and twelve or fifteen years afterwards removed it.

On the part of the defendant, evidence was given tending to show that various surveys of the line in question had been made, namely, one by Hunn, county surveyor in 1860; that they put down stakes, and they were south of where the willows were planted, and on the ridge between the two ditches; that these ditches and the ridge were made after the survey, and had been there ever since the defendant purchased; that the defendant did not know, and it had not been brought to his knowledge, that Kuderling and the

plaintiff had made any agreement such as claimed by the latter; and defendant denied building a fence on the west part of the line north of the ditch at the suggestion of the plaintiff. Evidence was given tending to show that the true line was where it was claimed to be by the defendant, and where the survey of Hunn located it; that two surveys had been made by Leach when county surveyor, one about two years and the other about one year before the trial, and there had been one made by one Randall; that the surveys made by Hunn, by Leach, and by Randall were on the same line substantially, or with but trifling difference, and that the willows that the defendant cut down and those he took away were all north of this line; that both ditches had been dug when the defendant purchased, and that dirt had been thrown up between them, and there was at the time popple and wild willow brush along there, and no ditches had been made afterwards; that Leach found some of the bearing trees marked by Hunn in his survey in 1860, and used his field notes as they appeared of record; and that the basis of the survey as made by Leach was the government survey; and that both of his surveys had been recorded. There was evidence on the part of the plaintiff tending to show that one Palmer had made a survey in 1867, according to which the line was the north ditch, as plaintiff contended.

The court charged the jury that it was for them to determine whether the line of Leach and Randall was the true line, and left it to the jury to find whether the plaintiff and Kuderling agreed upon the north ditch as the line between them, or whether the ditch was dug there as an expedient for the time being; that if they so agreed on the ditch as the true line, and the defendant, after he purchased, knew or ought to have known that the plaintiff claimed such ditch as the line, and had consented and acquiesced in such line, and it had existed for more than twenty years before the action was brought, without his asserting or at-

Kurz vs. Miller.

tempting to establish any other, then he would not now be permitted to claim any other to the disadvantage of the plaintiff; but refused to instruct the jury that "unless the defendant did know of such agreement and assent to it, either expressly or impliedly, it would not be binding on him." The court told the jury that in judging of defendant's knowledge of the line they might "take into account the facts and circumstances bearing upon the line, such as the ditch being there when he purchased, and still remaining; that the defendant maintained a fence north of it for several years, and until the previous summer; and the fact that the plaintiff had planted willows upon his side of the ditch, and any other facts and circumstances bearing upon the question." The court stated to the jury that the evidence did not show that after the defendant purchased of Kuderling in 1874 the plaintiff made any open or specific claim of title to the strip of land upon which the willows stood, and that the true line between the forties ever became the subject of conversation between them until about the time of cutting the willows in 1891, and charged the jury that "the fact that the plaintiff planted the willows upon the south side of the ditch, protected them by a fence from being destroyed by his cattle, and always claimed these willows as his own, and the right to cut them, and that he did cut some of them; that, if these facts are proved, this, *considering all the circumstances of the case and the nature of the land at that place*, is sufficient to constitute adverse possession of the land at that place up to the ditch dug by the plaintiff and Kuderling. Whether these are the facts it is for the jury to determine from all the evidence."

The jury found a verdict for the plaintiff for $25 damages, and from judgment rendered therefor, with costs, the defendant appealed.

*F. W. Houghton*, for the appellant, argued, among other things, that the instruction of the court was in effect that

Kurz vs. Miller.

the possession of the plaintiff was adverse. The question of adverse possession is one of fact to be submitted to the jury under proper instructions. *Whitney v. Powell,* 2 Pin. 115–119; *McPherson v. Featherstone,* 37 Wis. 632; *Ayers v. Reidel,* 84 id. 276; *Hacker v. Horlemus,* 74 id. 21. The evidence to establish adverse possession must be clear and positive and must be strictly construed, and must clearly show a continuous occupancy without any considerable interruption. *Sydnor v. Palmer,* 29 Wis. 226; *Wilson v. Henry,* 35 id. 241; *Haag v. Delorme,* 30 id. 591. The entire evidence offered by plaintiff and referred to in that portion of the charge is too trivial in character to support a claim of adverse possession. *Wheeler v. Spinola,* 54 N. Y. 387; *Miller v. Downing,* id. 631; *Bliss v. Johnson,* 94 id. 235; *Ladd v. Hildebrant,* 27 Wis. 135; *Thompson v. Burhans,* 79 N. Y. 93, 101.

For the respondent there was a brief by *Gary & Forward,* and oral argument by *Charles H. Forward.* To the point that, even if the line of the north ditch is not the true line, under the circumstances of its location and the acquiescence in it for a long time it is binding upon the parties and those claiming under them, they cited *Bader v. Zeise,* 44 Wis. 96; *Pickett v. Nelson,* 71 id. 542, 546; *Eiden v. Eiden,* 76 id. 435, 438; *Ayers v. Reidel,* 84 id. 276; *Tobey v. Secor,* 60 id. 310; *Donahue v. Thompson,* 60 id. 500; *Dhein v. Beuscher,* 83 id. 316.

PINNEY, J.   1. Where the true line was between the respective forty-acre tracts of the plaintiff and defendant was properly submitted as a question of fact for the jury. The evidence was quite convincing that the line established by the surveys, except, perhaps, that said to have been made by Palmer, was south of the place of the alleged trespass, and between the two ditches. The case was made to turn largely upon the view the jury might take of the facts in re-

spect to two questions: (1) Whether the defendant's grantor, Kuderling, and the plaintiff located and dug the ditch in 1871, and agreed upon it or considered it as the true line, and whether it had ever since been recognized and acquiesced in as the true line by both Kuderling and the defendant and for so long a period prior to the time of the alleged trespass that the defendant ought to be held concluded and estopped from disputing it. (2) Assuming the contention of the defendant as to the true location of the line to be correct, and that it ran south of the willows, had the plaintiff acquired title to the strip of land in dispute, and on which the willows grew, by continuous adverse possession of it for a period of twenty years before the alleged trespass?

It is important to bear in mind that at the time the defendant purchased his forty, shown by his deed to have been April 11, 1874, the appearances upon the ground were, to say the least, very equivocal. The evidence tends to show that there were two ditches about ten feet apart, and between them and about the same distance south of the willows there was a slight fence to turn cattle, and there was the row of willows growing,— a not usual or perhaps significant matter in that marshy locality. There is nothing to show that the defendant was ever informed who had planted them, or for what purpose, and the evidence was that the defendant never had any notice that the north ditch had been agreed on or acquiesced in as the true line by his grantor. He denies having built and maintained a fence on the north side of the north ditch on the western part of the line at the instance or suggestion of the plaintiff as a line fence, or that he had maintained it as such, and claimed that it was a temporary convenience and after several years had been removed. There was, it appears, no actual cultivation or use by the plaintiff of the *locus in quo* or the land between the two ditches. The plaintiff had put out the willows as a wind-

break, and it does not appear that anything had transpired amounting to a claim of title, adverse or otherwise, on the part of either party, to this strip of land, or that the question of the true location of the line between them had ever been the subject of claim or consideration until about the time of the alleged trespass. Upon the most favorable view of the evidence for the plaintiff it is difficult to say that the question whether there had been an adverse possession of the *locus in quo* as against the defendant since his purchase ought to have been submitted to the jury.

The presumption, in the absence of proof to the contrary, is that the possession of each of these adjoining owners was in accordance and coextensive with his legal title. One in possession of land to which he has no claim of title is presumed to be in possession in amity with and in subservience to the legal title. Evidence of adverse possession is always to be construed strictly, and every presumption is to be made in favor of the true owner. The burden of establishing it is on him who asserts it, and it is not to be made out by inference or presumption, but by clear and positive proof. *Sydnor v. Palmer*, 29 Wis. 252; *Wilson v. Henry*, 35 Wis. 245; *Hacker v. Horlemus*, 74 Wis. 21; *Dhein v. Beuscher*, 83 Wis. 325; *Ayers v. Reidel*, 84 Wis. 283; *Graeven v. Dieves*, 68 Wis. 317.

What constitutes adverse possession is a question of law for the court, and whether the necessary facts exist to establish it is a question of fact for the jury. In order to constitute adverse possession against the title of the true owner, the adverse claim must be sufficiently open and obvious, both as to the fact of possession and its really adverse character, to apprise the true owner, if in charge of the property and in the exercise of reasonable diligence, of the fact and of an intention to usurp possession of that which in law is his own. Secret or disconnected acts of an equivocal character, occurring at long intervals, will not suffice. The

possession must be actual, open, continuous, and under claim of right as against the true owner.

The court instructed the jury that " the fact that the plaintiff planted the willows up to the south of the ditch [the north one], protected them by a fence from being destroyed by the cattle, and always claimed these willows as. his own, and the right to cut them, and did cut some of them, *considering all the circumstances of the case and the nature of the land at that place,* was sufficient to constitute adverse possession of the land up to the ditch dug by the plaintiff and Kuderling." There is no evidence to show that any willows were cut or claimed by the plaintiff before 1891, or that he made any open or specific claim of title to the strip of land in question, or that the line had become the subject of consideration between the parties until that time, as the court had already informed the jury; and yet they were informed that the planting of the willows by the plaintiff, and that he protected them by the fence somewhat to the south of them, and cutting and claiming them in 1891, made out adverse possession *under all the circumstances,* and it was left for the jury to say whether the facts referred to were proved. The *circumstances* were very much in dispute, and the court could not rightfully assume to say what they were, to aid the defective and erroneous character of the instruction. The *circumstances* proper to be considered, the law required, should be found by the jury. They could not know, nor can it now be affirmed, what circumstances the court thought material or had been proved. The erroneous and injurious character of this instruction is apparent when it is remembered that there was not only no proof of actual cultivation or continued possession of any kind as to the strip of land in question, but the proof by the plaintiff's sons was that his occupation of his forty had only been up to the southern ditch, and that no one had occupied and used the space between the ditches for the past twenty

The Oshkosh City R. Co. and another vs. Winnebago County and others.

years. For this erroneous instruction the judgment appealed from must be reversed, and this renders it unnecessary to consider the instructions as to the other branch of the case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.