ILLINOIS STEEL COMPANY, Respondent, vs. TAMMS and
others, Appellants.

*April 29—May 31, 1913.*

*Adverse possession: Must be open and exclusive: Partnership: Lease
to one partner: Claim of ownership by the other.*

1. Where a partnership was in the actual and visible possession
   and occupancy of land, one of the partners (who was business
   manager of the firm) holding either for himself personally or
   for the firm a lease of the land in his own name from the
   owner of the legal title, while the other partner was making
   oral declarations that the land was his, but such declarations
   were not communicated to the owner, the possession of the
   latter partner was not such open and exclusive adverse pos-
   session as could ripen into title as against the true owner.
2. Under such circumstances the partner claiming ownership either
   had no possession at all except under the lease, or there was a
   mixed possession and his possession was not exclusive of that
   of the other partner as tenant of the owner.
3. Although the possession which may ripen into title need not be
   exclusive as against the world, it must be open and exclusive
   of the true owner.

APPEAL from a judgment of the circuit court for Milwau-
kee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

For the appellants there was a brief by *Fiebing & Killilea,*
attorneys, and *Moritz Wittig* and *H. J. Killilea,* of counsel,
and oral argument by *Mr. Killilea* and *Mr. Wittig.*

For the respondent there was a brief by *Theodore Kron-
shage, Jr.,* and *John H. Paul,* and oral argument by *Mr.
Kronshage.*

TIMLIN, J.   In this action of ejectment commenced No-
vember 2, 1897, a verdict was directed for plaintiff, judg-
ment thereon, and defendants appeal.   The defendants
claimed adverse possession not founded upon any written in-
strument for twenty years next prior to the commencement of
the action.   The error assigned, taken with appellants' ar-
gument in support thereof, goes only to the sufficiency of the

evidence with reference to adverse possession, and no other question need be noticed. There was in evidence a lease by an agent of the Wisconsin Iron Company (the latter an association representing the owners) to one Fred Kuehn, dated November 27, 1876, for the term of one year from the first day of the same November, and another lease, dated July 1, 1887, from the North Chicago Rolling Mill Company, under which plaintiff claims, to Fred Kuehn for the term of five years. The first lease is informal as to description, but it was treated by counsel as covering the premises in question, the boundaries of which at this time were very indefinite and uncertain. It appeared that Fred Kuehn and August Kuehn were brothers and partners in the business of catching and selling fish, and at some indefinite time in 1869 built a fish shanty on this property, which lay on the beach of Lake Michigan, and used the land for drying fish nets, storing fishing appliances, and perhaps for other similar purposes until 1874, when, according to the evidence most favorable to appellants, a brother-in-law of the Kuehns, one Gustave Rosenstack, became a member of this partnership. There is no definite evidence of inclosure of the area occupied or of claim of title by either the Kuehns or by the partnership prior to the incoming of Rosenstack, who died in 1893. Adverse possession by Rosenstack, originating in 1874, is attempted to be established by the testimony of certain witnesses, who were very indefinite as to years and as to the extent of the possession claimed and as to acts of ownership prior to 1876, but testified to oral declarations made by Rosenstack about thirty years before the time of giving their testimony. This testimony is vague and uncertain as to when these declarations were made and as to whether Rosenstack was claiming individually or claiming possession in the right of the partnership of which he became a member in 1874 or 1876. The leases mentioned cover a period of twenty-one years next prior to the commencement of the action. Fred Kuehn was

the managing member of this copartnership and attended to
its business affairs, while Rosenstack was engaged in work-
ing on the fishing tug setting and raising nets, etc., and prob-
ably drying nets on the beach.  The land was low and wet
at that time and Rosenstack gave orders to his men not to
throw the ashes from the tug boat into the lake, but put them
in a box and dump them on the beach, saying that the land
was his.  After 1876 the claims of ownership and the acts
of possession on the part of Rosenstack became a little more
definite, but are still quite vague.  There is no evidence go-
ing to show that there was any attempted transfer of any title
to this land, oral or written, from the Kuehns to Rosenstack
at the time the latter was taken into the firm, and if he was
claiming to own the land he must have been claiming to own
it either adversely to his copartners or in behalf of and as a
member of that copartnership.  It is extremely doubtful
whether Mr. Rosenstack was taken into the copartnership in
1874 or 1876, and it may be safely said that the evidence fails
to show with any reasonable degree of clearness or certainty that
he was taken into the partnership before the managing part-
ner, Fred Kuehn, signed the lease of 1876.  If it is essen-
tial to adverse possession that he came into the partnership
before the lease of 1876 was signed, the evidence is insuffi-
cient to establish that fact within the rule of *Ill. S. Co. v.
Budzisz,* 115 Wis. 68, 90 N. W. 1019.  This partnership
continued, occupying the premises in question, up to 1884,
when August Kuehn retired from the firm, selling his inter-
est to Fred Kuehn and Rosenstack.  The two latter as co-
partners continued the business and the occupation of this
land until 1889, when Fred Kuehn sold his interest in the
firm to one *Doepke* and retired.  In 1893 Rosenstack died
and the business and the possession of the premises passed
from this partnership to the appellants.

Under that view of the evidence most favorable to appel-
lants, therefore, one member of this partnership was holding

under a written lease from the owner of the legal title and another member was making oral declarations of his ownership, while the actual possession was in the partnership. The partner managing the business affairs of the copartnership, who signed the lease, was as notoriously in possession, if we consider him as a person separate from the firm, as was Rosenstack. So considered, Fred Kuehn's possession was the possession of the owner of the legal title, and, giving full weight to all that can be said in favor of Rosenstack's possession, there was a mixed possession, and the possession of Rosenstack was not exclusive of that of the tenant of the owner of the legal title. On the other hand, treating the lease to Fred Kuehn as an instrument of conveyance taken by him for the benefit and in behalf of the copartnership, Rosenstack had no possession at all, except under said lease and the succeeding lease, from 1876 up to the time of the commencement of this action. There are no presumptions in favor of adverse possession, because twenty years' exclusive occupancy has not been shown in Rosenstack.

The learned circuit court in directing a verdict for the plaintiff said: "As I understand the meaning of the statute and under the decisions of our supreme court, the adverse possession which is necessary to ripen into perfect title must be exclusive, and, as I understand it, the exclusion must be as against the world." The counsel for appellants has at considerable length and with great learning and industry attacked this as incorrect in law and respondent's counsel refuses to try to uphold it. It is no doubt incorrect. But it is only an incorrect reason given for a correct decision. The possession must be exclusive of that of the owner. The adverse possession must be such as to furnish the true owner means of knowing of such adverse claim. Ordinarily mere open possession without his consent will do so. *Lampman v. Van Alstyne,* 94 Wis. 417, 69 N. W. 171; *Kurz v. Miller,* 89 Wis. 426, 62 N. W. 182. With one of the partners holding

under a lease from it and the partnership occupying the premises, the acts of the partner Rosenstack, all the time actively engaged in the business of the firm, would bring no such means of knowledge to the owner. These acts would ordinarily and naturally be referred to his work as a member of the partnership and, where that partnership is occupying for partnership purposes under a lease to one of the partners, would not amount to a disseisin of the true owner. The oral declarations of Rosenstack, while indicative of his intention, were not communicated to the owner. The tenant of the owner, either for himself personally or for his firm, was in actual and visible occupancy. The possession which may ripen into a title must not only be open (that is, not secret or surreptitious), but must also be exclusive of the true owner, or, what is the same thing, of the tenant of the true owner. The tenant's possession is that of the landlord as provided in sec. 4216, Stats. So that this alleged possession of Rosenstack lacked the two requisites mentioned in *Jones v. Collins,* 16 Wis. 594, *i. e.* it was not open, nor was it exclusive of the true owner for the time required by law, if at all. It follows that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.