## Hatfield, et al. v. Richmond, et al.

(Decided December 2, 1914.)

Appeal from Letcher Circuit Court.

1. Title—Sale Under Voidable Judgment.—Title under a sale made under a voidable judgment is subject to be defeated by proper proceedings to set aside the judgment.
2. Land—Setting Sale Aside—Liens.—The purchaser having sold the land and his vendee not being made party to the suit to set aside the sale until after he had made a mortgage upon it, the mortgagee has a lien which is not defeated by a judgment setting the sale aside.
3. Mortgages—Title.—A judgment foreclosing the mortgage in a suit between the mortgagor and mortgagee does not affect the rights of persons not parties to the action, the legal title being in the mortgagor, remains in him as to them.
4. Land—Liens—Rents.—The mortgagee having bought the land at such a sale and conveyed it to another, his vendee takes the lien which he had and having enjoyed the use of the land rents should be set off against interest.
5. Title—Possession.—Possession which is not continuous for fifteen years will not confer title; and a holding under one rightfully in possession is not adverse.
6. Limitation of Actions.—Limitation does not run against a lien holder while in possession of the property.

PROCTOR K. MALIN and C. M. WHITT for appellants.

D. D. FIELDS and WOOTTON & MORGAN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

This action involves the title to a tract of about 300 acres of land lying in Letcher county, Kentucky.

The land in controversy was conveyed to Johnson Hatfield by the commissioner of the Letcher Circuit Court pursuant to an order made in the case of Johnson Hatfield, &c., v. S. T. Nichols. At the April term, 1910, of that court a writ of possession was awarded Johnson Hatfield, and on July 19, 1910, the writ was issued.

On July 31, 1910, plaintiffs, O. F. Richmond and others, heirs of Elizabeth Richmond, claiming to be the owners of the tract of land for which the writ of possession was awarded, and that they were not parties to the action in which it was issued, brought this action against defendants, Johnson Hatfield and the sheriff of Letcher county, to enjoin the execution of the writ, and asked that they be adjudged the owners of the land. On final hearing the court adjudged plaintiffs to be the owners of 4/10 of the land, and the defendant, Johnson Hatfield, to be the owner of 6/10 of the land. The injunction was perpetuated and commissioners appointed to divide the land between plaintiffs and defendant, according to the respective interests adjudged them. From this judgment Johnson Hatfield appeals, and plaintiffs prosecute a cross-appeal.

Hatfield derives title in the following manner: In 1862, B. W. Collins, a resident of Letcher county, died intestate, the owner of a tract of land consisting of 1,050 acres, embracing the land in controversy. On September 25, 1868, his administrator, Carter W. Collins, brought suit in the Letcher Circuit Court against the heirs at law and creditors of B. W. Collins to settle the estate and sell the land on the ground that the decedent did not leave sufficient personal property to pay his debts. Pursuant to an order of sale, the land was sold on November 4, 1872, and James B. Fitzpatrick, the attorney for plaintiff, became the purchaser. The sale was confirmed, and in October, 1873, the commissioner conveyed the land to Fitzpatrick. On June 10, 1874, Fitzpatrick conveyed the land to Jonathan Richmond.

On May 25, 1875, the children of B. W. Collins sued the administrator, Fitzpatrick, and others to have the deed to Fitzpatrick canceled on the ground of fraud and inadequacy of price, and on the further ground that some of the plaintiffs were infants and were not properly served with process, and no defense was made for them. On November 17, 1876, plaintiffs in that action, by

amended petition, set up the conveyance from Fitzpatrick to Jonathan Richmond, and asked that Richmond be made a party and the deed be set aside. On June 16, 1877, Fitzpatrick and Richmond filed answer. On June 17, 1881, a second amended petition was filed, setting up the fact that after the conveyance from Fitzpatrick to Richmond, an execution had been levied on the land in favor of Monroe, Smaltz & Company, who had purchased the land, and asking that they be made parties. On June 17, 1881, Monroe, Smaltz & Company filed answer. On November 22, 1890, Thomas Collins, who had purchased the interests of certain heirs of B. W. Collins, entered into an agreement with Jonathan Richmond for a settlement and compromise.

By this agreement the 1,050 acre tract of land was to be conveyed to S. T. Nichols, who was to pay Thomas Collins the sum of $300. For this sum Nichols executed his note to Thomas Collins. Nichols was to sell the land, pay off the note and other claims against the land, and divide remainder of the proceeds between himself and Jonathan Richmond. The agreement was in writing, and was filed in the action. On May 9, 1891, a judgment was entered vacating the judgment of sale in the action of Carter W. Collins, Administrator, v. B. W. Collins' Heirs, and the orders and deeds made pursuant thereto, and also canceling the deeds from the commissioner to Fitzpatrick and from Fitzpatrick to Jonathan Richmond, and the sheriff's deed to Monroe, Smaltz & Company. The judgment also directed the commissioner to execute a deed conveying the land to S. T. Nichols. On May 30, 1891, the commissioner executed a deed to Nichols, which was acknowledged, examined and approved, and recorded in the Letcher county clerk's office.

The $300 agreed to be paid James W. Collins not having been paid, Collins, on December 24, 1896, brought suit against Nichols to recover that sum.

On January 25, 1898, Johnson Hatfield brought suit in the Letcher Circuit Court against S. T. Nichols to recover the sum of $1,750.17. The 1,050 acre tract of land was attached as the property of S. T. Nichols.

At the August term, 1898, the two actions of James W. Collins v. S. T. Nichols, and Johnson Hatfield v. S. T. Nichols, were consolidated and thereafter prosecuted under the style of Johnson Hatfield, &c., v. S. T. Nichols. Jonathan Richmond became a party to the consoli-

dated action, and set up a claim to the land by virtue of a judgment in the action of B. W. Collins' Heirs v. B. W. Collins' Administrator, and also by adverse possession. In September, 1899, it was adjudged that Jonathan Richmond and S. T. Nichols were each entitled to an undivided one-half interest in the 1,050 acre tract of land, and that each interest was subject to a lien for one-half of the debt of $300 due to James Collins. It was further adjudged that Johnson Hatfield had no lien by his attachment against the one-half interest of Jonathan Richmond, but had a lien on the one-half interest of Nichols. The land was ordered divided, and commissioners appointed for that purpose. On February 6, 1900, the commissioners filed their report, showing that, pursuant to a request of the parties, they had laid off $300 worth of land on the upper end of the B. W. Collins 1,050 acre tract to Thomas Collins, and had divided the remainder between Jonathan Richmond and S. T. Nichols, giving to the former lot No. 1, constituting the lower end of the B. W. Collins farm, and to the latter lot No. 2, lying between lot No. 1 and the part allotted to James Collins. An order was entered allotting to Jonathan Richmond the boundary set apart to him, and ordering the sale of S. T. Nichols' part to pay the claim of Johnson Hatfield. On December 6, 1909, the commissioner sold the land allotted to Nichols, and Johnson Hatfield became the purchaser at the price of $1,400, which was more than two-thirds of its appraised value. At the January term, 1910, the commissioner filed his report of sale, which was approved and confirmed. At the April term, 1910, the commissioner executed a deed to Johnson Hatfield, which was duly approved, endorsed and certified, and recorded in the county clerk's office. Thereupon, Johnson Hatfield was awarded the writ of possession, the execution of which is sought to be enjoined in this action. The judgment of the Letcher Circuit Court of May, 1891, setting aside the judgment of October, 1872, in the action of B. W. Collins' Admr. v. B. W. Collins' Heirs, and the conveyance thereunder, to Fitzpatrick and the deed from Fitzpatrick to Richmond, has never been vacated or modified, and is still in full force and effect.

Plaintiffs in this action, O. F. Richmond and others, claim title as follows: After the conveyance to Jonathan Richmond by Fitzpatrick on June 10, 1874, Jonathan

Richmond, on June 10, 1876, mortgaged the 1,050 acre tract of land to his father, William Richmond. At this time Jonathan Richmond had not been made a party to the suit brought by B. W. Collins' Heirs to set aside the judgment of sale in the case of B. W. Collins' Admr. v. B. W. Collins' Heirs, and the deed executed to Fitzpatrick. While the latter action was pending, and Jonathan Richmond was a party thereto, William Richmond, the mortgagee, brought suit against Jonathan Richmond to enforce his mortgage lien. The land was sold, and William Richmond became the purchaser. Pursuant to an order made in June, 1881, the commissioner, on November 17, 1881, executed a deed to William Richmond. On November 17, 1884, William Richmond, in consideration of natural love and affection, conveyed the 1,050 acre tract of land to Elizabeth Richmond, wife of Jonathan Richmond and mother of plaintiffs in this action. Elizabeth Richmond lived for a few years, and then died, leaving several children, some of whom were plaintiffs in this action.

Our conclusions on these facts are as follows:

1. The sale of the land at which Fitzpatrick bought and the judgment under which it was made were voidable. But Fitzpatrick took the title under his deed until it was set aside and this title passed by his deed to his vendee, Jonathan Richmond, and such title as he had he mortgaged to his father, William Richmond. But the title which each took was voidable and subject to be defeated by proper proceedings to set aside the sale and judgment referred to.

2. Jonathan Richmond was not affected by the suit brought by the Collins heirs against Fitzpatrick to set aside the sale of the land until he was made a party to the action. He having mortgaged the land to his father, William Richmond, before he was made a party to the action, William Richmond was not affected thereby. But after this mortgage was executed, Jonathan Richmond still held the legal title to the land, and William Richmond had only an equity, that is, a lien on it to secure his debt. William Richmond, by his suit against Jonathan Richmond to enforce his mortgage, did not affect in any way the rights of the Collins heirs; they not being parties to that suit; and they having, in the meantime, made Jonathan Richmond a party to their suit; as to them the legal title remained in Jonathan Richmond, as it was before, notwithstanding the proceedings had in

the suit to which they were not parties. The rule laid down in Fenwick v. Macey, 2 B. Mon., 470, has not been in force since the revision of the statutes in 1851. (Douglas v. Cline, 12 Bush, 612; Woolley v. Holt, 14 Bush, 790; Taliaferro v. Gay, 78 Ky., 496; Mercantile Trust Co. v. South Park Residence Co., 94 Ky., 271.) The deed from William Richmond to Elizabeth Richmond vested in her no greater right than William Richmond had, and his only right as against the Collins heirs, was a lien on the property to secure his debt of $1,100.00 with interest. This right passed to Elizabeth Richmond, by the deed from William Richmond. She did not take the legal title to the land as against the Collins heirs, for they were not affected by the suit which William Richmond brought against Jonathan Richmond, to which they were not parties. She was entitled, however, to a lien on the land superior to the rights of the Collins heirs for $1,100.00 and interest. (Straffer v. Rodman, 156 Ky., 1.) Upon a consideration of all the facts of the case as shown by the record, we conclude that the use of the land by her, and those claiming under her, should be set off against the interest on the debt, and that she or her representatives should now be adjudged a lien on the land for $1,100.00 without interest. This lien will be adjudged on the entire original tract and each part of the tract should contribute ratable to its payment. Subject to the payment of this lien the land should be adjudged to the parties entitled to it under the judgments and conveyances made in the action referred to, setting aside the sale to Fitzpatrick.

On the return of the case to the circuit court, the necessary parties to a final determination of the matter will be brought before the court before a judgment is entered.

The judgment under which Fitzpatrick purchased, and the conveyance of the land to him in the suit to settle the estate of B. W. Collins being voidable, and having been set aside in the action referred to, the legal title to the land which vested in Jonathan Richmond under the deed from Fitzpatrick to him passes under the judgments and conveyances made in the action above referred to, subject to the lien of Elizabeth Richmond on the land for the $1,100.00 as above shown.

3. On the question of adverse possession the evidence of plaintiffs is as follows: O. F. Richmond had been living on the land for about 31 years, with the ex-

ception of about five years. During that time his father, Jonathan Richmond, at his request, was in possession. His grandfather gave the land to his mother for a home. From the time the deed was made they staid on the land until 1897. He then went to Virginia and remained there four years, and one year at Jackson. He and the other children claimed the patented land. Was living on the farm when the land was divided between Jonathan Richmond and S. T. Nichols. Did not assist the commissioners and surveyors in running the line, but went along and showed them the corners. At that time he claimed the land. Samuel Adams was a tenant on the land, first rented from Jonathan Richmond, lived there until Jonathan went to Virginia, then rented from Hiram Richmond, and lived there a while with Hiram. After that he leased from Owen Richmond. For the last 25 or maybe 30 years Mr. Richmond and his boys, or someone under them, had been in possession of the land, living on the farm or a part of it. Maggie bought a part of the farm and had been living there for some time. Owen had been living there ever since he returned. W. W. Hogg rented from Jonathan Richmond in 1876, and lived there twelve months. Since then Owen Richmond had been on it most of the time and in possession.

For defendant Thomas Collins stated that he lived on the farm for several years. In the division of the land the upper part was allotted to him, the middle part to Nichols, and the lower part to Jonathan Richmond. Jonathan lived principally on the lower end. Some of Jonathan's children also lived on the lower end. Owen Richmond had been living on the S. T. Nichols part for nine or ten years. Letcher Collins testified that Jonathan moved away from the land 25 or 26 years before witness testified. Two or three years later Jonathan returned, and lived on the land for 12 or 14 years. Jonathan lived on the lower part. That part he sold to Maggie. Never to witness's knowledge lived on the part allotted to Nichols. While living on the land Jonathan claimed it. At that time Owen and Hiram and the other children lived with him.

Neither Elizabeth Richmond nor her children claiming under her have had adverse possession of any of the land continuously for fifteen years. It is true that the family have occupied it, but Jonathan Richmond had an interest in the land, and the possession of the children was not adverse while their father lived on the land. We,

therefore, conclude that they have acquired title to no part of the land by adverse possession. But as Elizabeth Richmond and those claiming under her having lived on the land limitation does not bar their right to subject the land to the lien under the proof.

Judgment reversed and cause remanded for further proceedings consistent herewith.