HARDIN et al. v. WANSLEE et al. (No. 5804.)

(Court of Civil Appeals of Texas. Austin. Oct. 10, 1917. Rehearing Denied Oct. 31, 1917.)

1. TENANCY IN COMMON ☞15(3)—"ADVERSE POSSESSION" — EXCLUSIVENESS OF POSSESSION.

A tenant in common claiming title to land by adverse possession must show exclusive possession of the land, not merely possession with other members of the family against whom he asserts title, though he was exercising exclusive management and control and claiming title (quoting Words and Phrases, Adverse Possession).

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. PROPERTY ☞12—DIVESTMENT OF TITLE—DECLARATIONS DISCLAIMING OWNERSHIP.**

One cannot divest himself of title to land by mere declarations that he does not own or claim any of it.

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Suit for partition by Fred Turner, next friend of Johnnie and Aileen Hardin, against John Wanslee and another. From a judgment for Wanslee, plaintiffs appeal. Reversed and remanded.

Hart & Patterson, of Austin, for appellants. Jno. E. Shelton and Brooks, Hart & Woodward, all of Austin, for appellees.

RICE, J. This suit was brought by Fred Turner, next friend of Johnnie and Aileen Hardin, minors, against John Wanslee and Mary Caldwell for partition of three tracts of land situated on Onion creek, in Travis county, as well as for rents thereof, claiming that they together owned an undivided one-third interest therein, and that John Wanslee and Mrs. Caldwell each owned an undivided one-third interest. Mrs. Caldwell filed a disclaimer, and John Wanslee interposed a plea of ten-year limitation, and also pleaded improvements in good faith. The case was tried before the court without a jury, who found in favor of John Wanslee on his plea of limitation, and judgment was rendered for him against appellants for the land in accordance therewith, and in favor of both for costs.

The court filed its conclusions of law and fact, which we adopt and are as follows:

"(1) Johnnie Hardin and Aileen Hardin, plaintiffs, are minors, Johnnie Hardin being now about 19 years of age, and Aileen Hardin being about 15 years of age.

"(2) Joseph Wanslee and wife, Polly Wanslee, were married in the state of Tennessee in the year 1852. During the same year they moved to Texas, and on December 15, 1852, Joseph Wanslee purchased the 220-acre tract of land involved in this suit, paying cash therefor.

"(3) Polly Wanslee, wife of Joseph Wanslee, died intestate on the 24th day of June, 1874, leaving surviving her, children of herself and Joseph Wanslee, the following: J. T. Wanslee, John Wanslee, Mrs. Mary Caldwell and Mrs. Amanda Hardin. At the time of the death of Polly Wanslee, all of the said children were living, as members of the family, with Joseph Wanslee and his wife upon the said 220-acre tract of land, and after the death of their mother continued to live on said place, as members of the family, with their father, Joseph Wanslee, until his death, which occurred on the 29th day of August, 1882.

"(4) Joseph Wanslee left a will, in which he devised said 220-acre tract of land to his sons J. T. Wanslee and John Wanslee. After the death of Joseph Wanslee his daughters, Mrs. Mary Caldwell and Mrs. Amanda Hardin, acquiesced in the disposition of the property made by Joseph Wanslee in his will, the two sons assuming the burden of supporting the two sisters, and because of the arrangement so made said will was never probated.

"(5) J. T. Wanslee, John Wanslee, Mrs. Cald-

well, and Joe Hardin, then a child, continued to reside upon said tract of land until the death of J. T. Wanslee, which occurred on November 17, 1884. Mrs. Hardin, the grandmother of plaintiffs herein, after the death of her father, Joseph Wanslee, resided upon said land, as a member of the family, with her brothers and sister up to about two months before the death of J. T. Wanslee, when she was sent to the insane asylum, she having become insane about one year previous to the death of J. T. Wanslee.

"(6) On the 1st day of January, 1883, the defendant John Wanslee and his brother, J. T. Wanslee, purchased the 95-acre tract of land involved in this suit, all of the consideration for same having been paid before J. T. Wanslee's death. On August 11, 1884, J. T. Wanslee and John Wanslee purchased the 117-acre tract involved in this suit for $300 cash and notes aggregating the principal amount $2,200, and at the time of the death of J. T. Wanslee no part of the principal of said notes had been paid.

"(7) During the last sickness of J. T. Wanslee he indicated to John Wanslee and Mrs. Caldwell his desire that his brother, John Wanslee, should pay the amount then due upon said 117-acre tract of land, and that his brother should own all of said land, and should continue to support his sisters and their families.

"(8) After the death of J. T. Wanslee, Mrs. Caldwell and her children, and Joe Hardin, who was then a child 12 years of age, continued to reside on said 220-acre tract of land, as members of the family, with the brother, John Wanslee, he supporting them out of money derived from said tracts of land through his own labor and from rentals.

"(9) Mrs. Hardin, the mother of Joe Hardin, died in the insane asylum on the —— day of ——, 1891. Joe Hardin, the father of plaintiffs, was born on the —— day of ——, 1872. He married Mary Hancock, mother of plaintiffs, on the 26th day of December, 1896. Soon after their marriage, Joe Hardin and his wife moved into a house situated on the 117-acre tract of land, and resided there for about four years, Joe Hardin cultivating a portion of said land; he paying no rent for a part of the land cultivated by him, and he paying rent to John Wanslee for a portion of the land so cultivated.

"(10) About the —— day of ——, 1901, Joe Hardin and his wife separated, his wife removing from said premises, taking their youngest child; Joe Hardin and the child Johnnie Hardin moved to the residence of their uncle, John Wanslee, situated on the 220-acre tract of land, and continued to reside upon said place with said John Wanslee until the death of Joe Hardin, which occurred on the 21st day of July, 1903. The said Joe Hardin died intestate, leaving as his heirs the minor plaintiffs herein. The minor plaintiff Johnnie Hardin continued to reside with her uncle John Wanslee and her aunt Mrs. Caldwell for about a year and a half after Joe Hardin's death, at which time the mother took said child from John Wanslee's custody.

"(11) Since the death of J. T. Wanslee the defendant John Wanslee has at all times been in possession of all three tracts of land involved in this suit, exercising the exclusive management and control of same, and claiming the title to same. He has at various times made valuable improvements upon each of said tracts of land, and has paid all taxes accruing thereon, all of said lands being assessed in the name of John Wanslee.

"(12) I find from the circumstances in evidence that Joe Hardin, the father of plaintiffs,

during his minority and at all times after arriving at the age of 21 years, knew that his uncle, John Wanslee, was asserting title to all of the lands involved in this suit. I find from the facts and circumstances that the said Joe Hardin at all times recognized and acquiesced in such claim of ownership on the part of John Wanslee.

"Conclusions of Law.

"I conclude that the statute of limitation began to run in favor of the defendant John Wanslee against Joe Hardin, deceased, upon his arriving at the age of 21 years, and that the defendant John Wanslee has acquired title to the whole of said premises by virtue of said statute."

Appellants contend by their several assignments that the judgment of the court is unsupported by the facts, in that the evidence failed to show that appellee had adverse possession of the premises in controversy for the period necessary to perfect title thereto under his plea of limitation, but, on the contrary, that he, together with appellants and other members of their family, occupied the premises during the entire time as one family, and therefore there was no adverse possession thereof on the part of appellee such as necessary to show ouster and perfect title by limitation; and this is the crucial point involved in this appeal.

[1] It will be noted that in the eleventh finding of fact, the only one treating of this question, the court failed to find that appellee was in exclusive possession of either or all of said tracts of land, but merely found that he was in possession thereof, exercising exclusive management and control of same, and claiming title thereto. This is not, in our judgment, sufficient, but in order to support the statute of limitation the party claiming title must clearly show that he was in exclusive possession of the land.

[2] The facts on this issue briefly summarized show that from the death of Jos. Wanslee, in 1884, the family, consisting of his children and grandchildren mentioned in the court's findings, including appellants' father, lived upon the land as one family, and after the death of J. T. Wanslee continued to do so until the death of Jos. Hardin, father of appellants, during the whole of which time the family was supported and sustained by the proceeds of the farm under the management and control of appellee. It is true, the evidence does show that Joe Hardin frequently made statements to the effect that he did not own or claim any of the land in question, but this is immaterial, as a party cannot divest himself of title by mere declarations. He was reared by his uncle, who was the head of the family and occupied towards him the position of father, and it is not shown that he had ever known what interest he had in the land, nor do the facts show that appellee ever expressly notified him that he claimed exclusive possession of it, except on one occasion immediately prior

to his death, when he discussed the making of a will; nor did appellee ever oust or attempt to oust him from the premises, but permitted him to live thereon from the time of his birth until his death, he being supported, as well as other members of the family, from the proceeds arising from the land.

In order to sustain the plea of limitation, it is not only necessary that the party relying thereon should show that he was in possession of the land in controversy, but it must also be shown that he was in exclusive possession of the premises. It is not sufficient, we think, merely to show that he occupied it in common with the others against whom he asserts title. Our statute on this subject (article 5675, vol. 4, Vernon's Civil Statutes) provides that:

"Any person who has the right of action for the recovery of any lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using, or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward."

And the decisions construing the expression "adverse possession" hold that such possession must not only be exclusive, but hostile as well. In Words and Phrases, vol. 1, p. 227, it is said:

"An adverse possession which will bar a legal title must be hostile and under a claim of title actual, open and notorious, exclusive and continuous," citing a long line of cases in its support.

In 1 Cyc. vol. 1, p. 1024, title V, under the head of "Exclusive Possession," it is said:

"The rule is broadly stated in a very considerable number of decisions that exclusiveness of possession is a necessary element of title by adverse possession; that possession must be exclusive, as well as hostile. In some decisions it is either held or said that the possession must be exclusive of all persons whatsoever, and no qualification of this doctrine is recognized by them. Nevertheless, this rule has been qualified in some jurisdictions, at least to this extent, that a person may, while admitting title in the federal or state government, hold exclusive of all others."

The text is supported by many authorities. See notes thereunder.

The possession of appellee was not sole and exclusive; he occupied the premises with other members of the family, including the father of appellants, without which title by limitation, it seems, cannot be sustained. In Ward v. Cochran, 150 U. S. 597, 608, 14 Sup. Ct. 230, 233 [37 L. Ed. 1195], it is said:

"Possession * * * not exclusive, but in participation with the owner or others, falls very far short of that kind of adverse possession which deprives the true owner of his title."

See, also, Lloyd v. Rawl, 63 S. C. 219, 41 S. E. 312.

In Irvine v. Irvine (Ky.) 89 S. W. 193, a mother and son lived together on the land, and both claimed it by limitation against the other. The court does not discuss the ques-

tion at length, but pointedly decided it by simply saying:

"It is shown without contradiction that the appellee lived upon this land from about the year 1870 until the institution of her action, and that appellant resided with her nearly all this time. Under these circumstances neither can claim title by adverse possession."

In Whitman v. Aldrich, 157 S. W. 464, it is held that the plea of limitation is not available to parties who have been in possession as tenants in common with claimants of adverse interest. And in Wiley v. Bargman, 90 S. W. 1116, Judge Neill, rendering the opinion, held that occupancy by a tenant does not confer title by limitation where the tenant's possession is not exclusive, but is shared in common with one who is in possession as tenant of another. In Larwell v. Stevens (C. C.) 12 Fed. 559, 2 McCrary's Rep. 311, it is said:

"The possession, in order to avail the defendant, must be an exclusive possession; that is, he must not have held it within ten years prior to the commencement of the suit, in conjunction with one who was the real owner of it. If the real owner and the claimant of the possession, within ten years prior to the bringing of the suit, had joint possession of the premises sued for, such a possession will not avail this defendant. The possession follows the title, and, if the owner and others are in possession, the law considers the owner to have the possession."

In White v. White, 52 Ark. 188, 12 S. W. 201, the facts are very similar to the case at bar, except the deed was to the son. The son lived and had his home with the father who controlled the place, and, as in the case under consideration, finally claimed title by limitation against his son. It was held that the father could not avail himself of the statute of limitation. In Quillen v. Betts, 1 Penn. (Del.) 53, 39 Atl. 595, it is said:

"In case of common possession by two or more persons, the law adjudges the rightful possession to him who has the legal title; and no length of holding in such case can give title by possession, against such legal title."

The same rule is announced in Bartholomew v. Edwards, 1 Houst. (Del.) 17, Spicer v. Dashiells, 5 Boyce (Del.) 493, 94 Atl. 901, 902, and Lindsay v. Austin, 139 N. C. 463, 51 S. E. 990. In Boynton v. Miller, 144 Mo. 681, 46 S. W. 754, the husband purchased property with his wife's money, but took the deed in his own name. After her death he claimed title by limitation. The court says:

"Nor does the statute of limitations constitute a bar in this case. This proceeding was instituted in 1893, the wife having died * * * in 1885. Both husband and wife occupied the premises together; and there was no adverse possession, and consequently the statute could not run."

The same principle is applied in Hume v. Hopkins, 140 Mo. 65, 76, 41 S. W. 784, where a stepdaughter claimed that she and her deceased mother paid for the property and the stepfather had the deed made to himself and wife. The court says:

"The fact that defendant, the daughter of Mrs. Haden, lived in the family during their lives, constituted no adverse possession."

In Ingalls v. Newall, 139 Mass. 268, 273, 30 N. E. 96, 97, one tenant in common built a boat and fish house, inclosed it with a wall, rented it and received the rents and paid taxes thereon, but the other cotenants used it as they found it convenient to do so. The court says:

"There was here no sole possession so long as the brothers of Joseph Ingalls were permitted to use the land and the structures, there being no exclusion of them."

And it holds that such possession was not sufficient to support the statute of limitation. In Gafford v. Strauss, 89 Ala. 283, 7 South. 248, 7 L. R. A. 568, 18 Am. St. Rep. 111, it is said:

"Possession, to be adverse, so as to vest title in the possessor after the lapse of the requisite time, must be, not only open, notorious, and continuous, but also exclusive. It must operate to oust or disseise any other person who may claim title, or right of possession. In order to fall within the operation of the statute of limitations, the possession must be sufficiently exclusive to put the dispossessed claimant to his action or entry. This can never be the case, where the party having the title is in possession, though it may be joint. Two contemporaneous possessions of the same property, each adverse to the other, is a legal absurdity not conceivable. Hence when two persons are in possession, claiming under different and hostile rights, the law refers the possession to the party having the title."

The same rule is stated in Barr v. Gratz, 4 Wheat. 213, 223, 4 L. Ed. 553; Washburn on Real Property, pp. 138, 139. In Hinton v. Farmer, 148 Ala. 211, 213, 42 South. 563, 564 (121 Am. St. Rep. 63), the wife at the time of her marriage was the owner of a tract of land, and from her marriage she and her husband lived on it until her death. While he was so occupying the place with her, he obtained a deed to it from a party who did not have title. After the death of his first wife, he married again and made a deed to the second wife, who after his death claimed the land by limitation against the heirs of the first wife. The court says:

"The theory of the defendant seems to be that the deeds should have been admitted as tending to show adverse possession of the lands by Hinton, the husband. If it be conceded that the husband, under any circumstances, can acquire title to the lands of his wife by adverse possession, he certainly cannot do so by having a joint possession with her. One of the essential elements of adverse possession is that the possession must be exclusive. Two persons cannot hold the same property adversely to each other at the same time."

In Towle v. Quante, 246 Ill. 568, 92 N. E. 967, it is said:

"Disseisin by plaintiff in error and adverse possession as against defendant in error cannot be made out by inference or implication. The proof to establish such disseisin must be strict, clear, positive and unequivocal. * * * Defendant in error must have been actually ousted of possession by plaintiff in error before the filing of the bill. A joint possession by two,

even though the claim of each is adverse to the other, will not be a disseisin of one by the other. Where two are in possession the seisin follows the title and there can be no disseisin unless the rightful owner is altogether deprived of possession."

In Washburn on Real Property (5th Ed.) vol. 3, p. 138, it is said:

"It is accordingly held that where two persons are in possession at the same time, under different claims of right, he has the seisin in whom is the true title. If there is a mixed possession, but neither can show a better title, neither can bring trespass against the other."

In Washburn on Real Property, vol. 1, p. 63, the rule is again stated as follows:

"So if several persons have a mixed possession, as it is called, of land, and one of them has title to it, the seisin belongs to him only. * * * No one who has a seisin and title to land will lose his seisin by any entry by a stranger, so long as he retains the possession. Accordingly, if a man entered and made a feoffment, the owner being upon the land, the feoffment was void.".

In Portis v. Hill, 3 Tex. 273, 279, it is said:

"In cases of cotenancy (joint tenancy, tenancy in common, and coparcenary), as the seisin and possession of * * * the other, or others, the mere fact of the uninterrupted possession of one tenant, or an uninterrupted possession which implies no expulsion of the other, is not an adverse possession; but, to constitute a disseisin and adverse possession in this case, there must be, in the language of the books, an actual ouster."

In Gaylord v. Respass, 92 N. C. 553, 559, it seems that a stepson lived with his stepfather, but made no claim to his interest in the land, and it is said that:

"James F. Adams, the owner of a small fractional interest, has remained on the land with his stepfather and guardian, so that there has been no adverse holding by the latter against him. In case of a common possession by two or more the ownership draws to it the possession, and it is deemed to be in him who has the title. * * * The principle prevailing in such cases is so clearly stated in the opinion of Baron Rolfe in Daniel v. Woodruff, 10 M. & W. (Ex.) 607, that we transfer his words: 'We are of the opinion that the intention was wholly immaterial, and that the effect of the entry must be ascertained upon legal principles, irrespective of the motives or meaning of the party by whom the entry was made. Where a party having a right of entry enters, it is not competent to him to repudiate any rights he may possess, and to say he has entered as a trespasser, or by some other than his real title. As soon as he has entered he is possessed, whether he will or not, by virtue of every title which he had in him, and which he could assert by entry.' The remark applies with equal force to a possession acquired and continued. Declarations of nonclaim, however often and persistently repeated, do not change the relation of the owner to the possession, which in spite of all attempted disclaimers is in him under and by virtue of his title."

In McCammon v. Pettit, 3 Sneed (35 Tenn.) 242, it is said:

"We think it is very clear that neither defense can avail the defendants under the circumstances, for the plain and simple reason that there has not at any time been an adverse possession. This has been joint, and consentive in both and not exclusive or hostile in either. Under these circumstances, it has certainly never been held that either time would corrode or limitations bar a good title, whether equitable or legal. * * * If Pettit was in possession under his legal, the complainant was there with him under her equitable, title; both were in the enjoyment of the use of the land, and neither attempted or desired to oust the other. As the statute only begins to run when the possession becomes exclusive and hostile to all adverse titles, there was no point of time in this case when it should start upon its work of destruction of all opposing titles. Where two are in possession, the one having title and the other none, it will inure to the benefit of the former; but where both claim title, the possession is neutralized."

In Fenton v. Miller, 94 Mich. 204, 215, 53 N. W. 957, 961, it is said:

"The mere possession by one cotenant is not sufficient to establish ouster and adverse possession, and especially where the cotenants are brothers and sisters. * * * Acquiescence by brothers and sisters in the possession of the homestead of their parents by another brother or sister, who is a tenant in common with them, is no evidence of ouster or adverse holding."

See, also, Illinois Steel Co. v. Tamms, 154 Wis. 340, 141 N. W. 1011.

In Hatfield v. Richmond, 161 Ky. 352, 170 S. W. 951, 954, and Spencer v. O'Neill, 100 Mo. 49, 12 S. W. 1054, it is held that where a place is occupied by a family as a home, one member of it cannot acquire title by limitation against the others. So it is held in Wilson v. Sutton, 153 Ky. 96, 154 S. W. 394, that where a father and children occupy land together his possession cannot be adverse to them. And in Brumback v. Brumback, 198 Ill. 66, 64 N. E. 741, it is held that where a son resides with his mother upon the place, neither he nor his wife, to whom he had made a deed, can acquire title by limitation against his mother, who was a tenant in common with him, and this, though the son pays the taxes, appropriates the rents and makes improvements.

For the reasons stated, we hold that the court erred in concluding that appellee had acquired title to the land in controversy by limitation, because the evidence, in our judgment, fails to show adverse possession on his part. We therefore reverse and remand the case for another trial.